[No. 1521.]

## CHARLES E. BROOKS, RESPONDENT, *v.* THE NEVADA NICKEL SYNDICATE, LIMITED, A CORPORATION, APPELLANT.

PRACTICE—APPEAL—MOTION TO VACATE JUDGMENT—INDEPENDENT REM-
EDIES.  Under our practice act, the appellant can appeal from the
judgment, and, at the same time, prosecute a motion to vacate and
set aside the judgment, they being separate and independent reme-
dies.

JUDGMENT—NOT SUSPENDED OR VACATED BY APPEAL.  That an appeal from
a judgment does not operate to vacate or suspend such judgment,
is evident from those sections of the civil practice act regulating the
method of stay of execution of judgment after appeal therefrom.
(Gen. Stats. 3364–3367.)

PROCESS—SUMMONS—CONSTITUTIONAL LAW.  A summons is not a process
within the meaning of article VI, section 13, of the state constitu-
tion, requiring all process to run in the name of the state; hence, a
summons that runs in the name of "The People of the State of
Nevada" is not void.

SUMMONS—FOREIGN CORPORATION—RESIDENT AGENT.  Statutes of 1889, p.
47, requires a foreign corporation doing business or owning property
in the state to appoint an agent within the state, upon whom
service of summons can be made; and, upon failure to make such
appointment, service may be made upon the secretary of state:
*Held*, in an action against a foreign corporation, that an allegation
in the complaint that defendant owns certain specified mining
claims in the state is a sufficient showing that it owns property
within the state.

IDEM—IDEM—IDEM—SERVICE ON SECRETARY OF STATE.  If the conveyance
of certain mining claims in the state to a foreign corporation, as
alleged in an action against the corporation, is merely a mortgage,
the allegation is a sufficient showing that the corporation is doing
business within the state to authorize the service of the summons
on the secretary of state under said Stats. 1889, p. 47.

IDEM—IDEM—IDEM—IDEM—RETURN OF SHERIFF. A certificate by the sheriff, that defendant has no agent within a certain county upon whom service of summons can be made, is not sufficient to authorize service on the secretary of state, under said Stats. 1889, p. 47.

FOREIGN CORPORATIONS—SUMMONS—WHEN MAY BE SERVED ON SECRETARY OF STATE. Under said Statutes of 1889, p. 47, in order for service of summons upon a foreign corporation to be made upon the secretary of state, it must affirmatively appear of record that such corporation is the owner of property or is doing business in this state, and that the company has no agent in the state upon whom service can be made.

APPEAL from the District Court of the State of Nevada, Ormsby county; *C. E. Mack,* District Judge:

Action by Charles E. Brooks against the Nevada Nickel Syndicate, Limited, and another. From a judgment for plaintiff, the Nevada Nickel Syndicate appeals. Reversed.

The facts sufficiently appear in the opinion.

*W. E. F. Deal,* for Appellant:

I. The district court did not have jurisdiction of the Syndicate, and the judgment and decree are null and void. No summons was ever issued in this action. Section 13, article VI, of the constitution of this state, provides: " The style of process shall be ' The State of Nevada,' and all prosecutions shall be conducted in the name and by the authority of the same." The paper entitled " summons " was no summons. The style in the paper is " The People of the State of Nevada." (*Curtis* v. *McCullough,* 3 Nev. 210; *Charles* v. *Marney,* 1 Mo. 537; *Fowler* v. *Watson,* 4 Mo. 27; *Davis* v. *Wood,* 7 Mo. 162; *Doan* v. *Boley,* 38 Mo. 449; *Branch* v. *Branch,* 6 Fla. 314; *Knott* v. *Pepperdine,* 63 Ill. 219; *Cleland* v. *Tavernier,* 11 Minn. 194; *Gorman* v. *Steed,* 1 W. Va. 1; *Gilbraith* v. *Kuyendall,* 1 Ark. 50; *Manville* v. *Battle Mt. Smelting Co.,* 5 McCrary (U. S.) 328.)

II. The return of the sheriff does not show that the Syndicate did not comply with the statute, and the record is absolutely silent upon the subject. The record shows conclusively that there was no other proof made of the summons than the return of the sheriff. The return does not show that the Syndicate had not complied with the act, nor that the Syndicate did not have agents in the state upon whom service could have been made. The return of the sheriff shows

no more than the fact that no agent of defendant could be found in Ormsby county. That is all the sheriff could show by his return. He is a ministerial officer, and could make no return except as to the existence or non-existence of an agent of the Syndicate within Ormsby county; and that is all his return shows or was intended to show. The record is absolutely silent as to any fact under which such a service as was authorized by the statute could have been made, and there was no proof made to the court of any fact prior to the service of the summons which authorized such a service.

III. The summons in this case (if the paper be a summons) is shown by the sheriff's return to have been made on the secretary of state. The sheriff could not officially serve the summons out of his county, nor could he certify to anything except that he had or had not made service, when and where he made it, and whether or no he could or could not find the defendant in his county. His return of any matter other than that which fell within the line of his duty, as provided by law, is nothing but surplusage, and is of no more effect than a clipping from a newspaper would be. As he had no official power outside of his county, he could not know whether the Syndicate had or had not an agent outside of his county upon whom service could be made. If the Syndicate had been served by delivery to its agent outside of Ormsby county by the sheriff of that county, the sheriff could only prove the service by an affidavit, as would be the case with any other citizen. The sheriff returned that he " served personally the within summons and copy of complaint upon Eugene Howell, secretary of state, for defendants in the above entitled case by delivering to him, in the county of Ormsby, State of Nevada, on the 3d day of October, A. D. 1896, a true copy thereof, and by showing him this original." This was all he could return, but he added " the defendants having no agents in the state upon whom service could be made after due diligence cannot be found in my county."

IV. The return is upon a printed blank, and all the printed matter not crossed out is part of the return. The law being strictly construed, the double negative means that defendants have agents in the state that could be found in Ormsby county. This is the meaning that must be given to

this return, as the inquiry is what did the sheriff return, not what he intended to return. But what could the sheriff have returned in place of the words last quoted, or what could he have intended to return? All that he could have returned, if such was the fact, is that he could find no agent of defendant in Ormsby county, after using due diligence, upon whom service could be made. He could not return that defendant had no agent in the state, because he could not know anything outside of his county, or make any return of what did or did not exist out of his county. He could not, by his return, show that the defendant had not appointed an agent and certified his residence and filed the certificate with the secretary of state. That fact could only be proved by an affidavit, and, for all that appears to the contrary in this judgment roll, the Syndicate had agents or officers who, under other statutes of the state, could have been served with this summons.

V. No showing of any kind was made before either the court or the judge until the trial. The silence of the statute upon these matters only makes it the more necessary that every fact required by the statute should be shown to have been made by a record, and that the court authorized the service to be made by a record before any service was made. These prerequisites are, and must be, the very basis of acquiring jurisdiction, and without them all judicial proceedings are nullities. Presumptions in support of judgments are limited to jurisdiction over persons within the limits of the state. (*Galpin* v. *Page*, 18 Wall. 350; *Neff* v. *Pennoyer*, 3 Saw. 93; *Belcher* v. *Chambers*, 53 Cal. 639.)

VI. It does not appear by the record that the Syndicate either owned property or did business within the State of Nevada at the time when this action was commenced, or at any time afterwards, but it does appear that the Syndicate neither owned any property, nor did any business in the state, at the time when this action was commenced, or at any time afterwards. The statute in question required only those foreign corporations which owned property or did business in this state to comply with its provisions. It is not alleged in the complaint that the Syndicate owned any property in the state, nor that it did any business in the state. It is

alleged that it is a corporation, organized under the laws of the kingdom of Great Britain, having its principal place of business in the City of London. It is alleged, however, that the National Nickel Company, which is really the plaintiff in the case, was organized for the purpose of carrying on and conducting a general mining business in the State of Nevada, and more particularly to prospect for and develop its nickel mines in the county of Churchill, in the State of Nevada, and for more than five years last past has been actually engaged in the prosecution of work in the development of its mines, which are described in the complaint, and which are the same property described in the mortgage mentioned in the complaint. The complaint was filed October 2, 1896, so that up to that time it owned the very mines described in the mortgage, and was engaged in the business of mining on those mines, and had been so engaged for five years, up to the time of the commencement of this action. There is an utter lack of any showing in the judgment roll that would tend to bring the Syndicate within the terms of the statute. The plaintiff was obliged to show that the National Nickel Company was in the possession of and owned this property, otherwise it could not maintain this action. The plaintiff neither owned nor possessed the property, the title of which was alleged to be clouded by the deed of conveyance.

VII. Section 3278, Gen. Stats., provides: "An action may be brought by any person in possession, by himself or his tenant of real property, against any person who claims an estate or interest therein adverse to him for the purpose of determining such adverse claim, estate or interest." If it be claimed that Charles E. Brooks is anything more than a nominal plaintiff, then the judgment is void, because, upon the face of the judgment roll, he was not in possession of the property either as owner or by his tenant. If it be claimed that the National Nickel Company is the real plaintiff, it could maintain the action, providing the complaint showed that the instrument which was alleged to be a deed of conveyance was in fact such an instrument, but the complaint shows that it was a mortgage, and not a deed. Even assuming, however, that the complaint sets forth sufficient facts to sustain an action to quiet title, its allegations negative the

claim that the Syndicate owned any property or did any
business within the state. It could not own that which the
National Nickel Company owned, as the allegation of owner-
ship of the National Nickel Company of the mines which
the Syndicate is alleged to be in possession of under a deed
of conveyance, claiming the ownership of it, negatives the
last allegation. Two cannot be the sole owners of the same
property. Ownership in the National Nickel Company
excludes ownership in any other, and the very instrument
under which the Syndicate is alleged to be in the possession
of the property claiming to be the owner is, upon its face, a
mortgage to secure the payment of money. The statute does
not say that any foreign corporation *claiming to own property*,
and failing to comply with its provisions, may be served as
provided in the statute, and the statute providing for such
substituted service must be strictly construed, and its terms
cannot be extended to embrace any others than those men-
tioned. (*Scorpion S. M. Co.* v. *Marsano*, 10 Nev. 370; Works
on Jurisdiction of Courts, p. 266, *et seq.*)

VIII. The statute, which is one out of the ordinary course
of the law and in derogation of the common law and which
must be strictly construed, does not provide that foreign cor-
porations in possession of real estate and claiming to own
real estate may be served with summons by delivery to the
secretary of state, but that such corporation *must own* prop-
erty or *do business* in the state. Much less does it provide
that a foreign corporation, claiming the right of possession
under a mortgage which provides for such possession as
security for the payment of money, shall appoint and keep
an agent in the state. To place such a construction upon
this statute would require every non-resident corporation
loaning money upon real estate in this state upon mortgage
to appoint and keep an agent in this state upon whom pro-
cess might be served.

IX. The judgment in this case was void upon its face,
because it does not appear from the judgment roll that any
showing was made to the court *prior to the service of the sum-
mons* that the defendant, Nevada Nickel Syndicate, had not
complied with the act of February 25, 1889 (Stats. 1889, p.
47), nor does it appear that this court made any order for

such service, nor that the defendant, Nevada Nickel Syndicate, owned any property or did any business within the State of Nevada, nor that it had not some officer or agent upon whom service could be made within the state, as provided for by section 3051 of the General Statutes, and it does not appear from the judgment roll that the Nevada Nickel Syndicate neither owned nor did any business in the state, and that no showing, *prior to the service of the summons,* was made to the court that the Syndicate had not complied with the act, and that no order was made by this court directing such service to be made, and it also appears from said judgment roll that no showing was made to this court, as appears by the judgment roll either before or after service of summons, that the Syndicate had not complied with the act, nor that it did not have some agent or officer in the state upon whom service of summons could have been made under section 3051 of the General Statutes.

X. It is contended by counsel for Charles E. Brooks and National Nickel Company that this paper is not process as used in the constitution of the state. If process as there used be one thing, and summons another and entirely different thing, what did the legislature mean when it used the word " process " in the Statutes of 1889, under which this service is claimed to have been made? The word " process " is used in the title of the act and six different times in the body of the act itself, and nowhere, either in the title or in the body of the act, is the word " summons " used. Not only is the word " process " used, but it was qualified by the word " legal," characterizing it as the process which is provided by the constitution of the state, which alone provides in whose name process of all, any and every kind shall run, and this constitutional provision must be read in connection with any statute on the subject of process to ascertain what the supreme law of the state intended by the word " process." The statutes of the state providing what a summons shall contain are in addition to, and must be supplemented by, the provision of the constitution which provides the style of the process. The authorities which hold, notwithstanding constitutional provisions providing the style of the process, that

a summons is good without that style, or with any other style, were legislating instead of interpreting laws.

XI.   The fact that the Syndicate appealed to this court directly from the judgment in the Brooks case does not affect the proceedings of the Syndicate in the district court to set aside the judgment by motion, nor this appeal from the order setting the judgment aside.   An appeal from a judgment does not waive the right of a party to get any other legal relief by any other proper collateral proceeding then pending. At the time the appeal was taken the motion to set aside was pending and undetermined.   The statute gave the Syndicate the right of appeal within the time allowed by law, and the power to set aside void judgments is inherent in courts of general jurisdiction.   Each right can be exercised at any time before the judgment is in fact set aside by the district court.   The case would have been different if the appeal had not been taken until after the judgment was in fact set aside.

*Geo. W. Baker*, for Respondent:

I.   Our contention is that a summons does not fall within this constitutional provision of " process," which must be in the name of the state.   And this seems to be the view taken by the legislature in enacting the section of the statute describing what the summons shall contain.   Gen. Stats. 3046, provides:   " The summons shall state the parties to the action, the court in which it is brought, the county in which the complaint is filed, the cause and general nature of the action, and require the defendant to appear," etc.   Section 3045 provides that the summons shall be issued and signed by the attorney for the plaintiff or by the clerk, and, when issued by the clerk, shall be issued under the seal of the court.   This is all the statute requires, and there is no mention made in the statute that it shall run in the name or by the authority of the state.   (*Porter* v. *Vandercook*, 11 Wis. 70; *Comet Consolidated M. Co.* v. *Frost*, 25 Pac. Rep. 506; *Gilner* v. *Bird*, 15 Fla. 411; *Hanna* v. *Russell*, 12 Minn. 80; *Baily* v. *Williams*, 6 Or. 71.)

II.   Upon an examination of the old cases cited by counsel in his brief, it will be found that they do not bear out the contention that he makes, with one exception—that of 1st

Ark.—and the reasoning of that case is not such as to be reassuring to the practitioner of to-day. The case of *Curtis v. McCullough* (3 Nev. 202) was a writ of *mandamus*, which can only be issued by a court of record, whereas a summons may be issued by the attorney for the plaintiff, and is simply a notice to the defendant that an action has been commenced against him. (*Lowry* v. *Harris*, 12 Minn. 255; *Bludworth* v. *Someyrac*, 3 Martin (La.) 719; *Kimball* v. *Taylor*, 2 Woods (U. S.) 37.)

III. It must be remembered always that the return of this summons shows that the sheriff served the defendant by delivering to Eugene Howell, secretary of state, a copy of the summons attached to a certified copy of the complaint, the defendants having no agents in this state upon whom service could be made. It may be conceded that, in making service upon a defendant by other methods than personal service, a substantial compliance with all the statutory requirements is necessary. But, tested by this rule, the service here is a full compliance with the statute. The defendants are shown by the complaint to be foreign corporations, and that they had no agents in the state upon whom service of summons could be made, and, therefore, the sheriff served the summons upon the secretary of state as provided by the statute. It is objected that this return does not show that the defendants did not comply with the act in the appointment of an agent in the state upon whom service could be made, in the face of the fact that the officer does not return that the defendants had no agent in the state upon whom service could be made. If this statement is not true, the defendant should proceed against the sheriff for making a false return, but surely it cannot attack this return by an appeal from the judgment. Neither does this appeal bring up any of the findings except the judgment roll, and, in support of the judgment, the court will presume that any proof necessary to support the judgment, including that which would show a failure upon the part of the defendants to comply with the state statute and appoint resident agents upon whom such service could be made, if such proof were indeed necessary. (*Flannery* v. *Andersen*, 4 Nev. 437; *Keys*

v. *Grannis*, 3 Nev. 548; *Champion* v. *Sessions*, 2 Nev. 271;
*Leete* v. *Sutherland*, 20 Nev. 21.)

IV. The record here shows that the officer returned that
the defendant had no agent in this state upon whom service
could be made. How he arrived at this conclusion is not
disclosed by this record, nor could it be on an appeal from the
judgment roll alone. It has not been usual in the past for
the supreme court to accept the statements of counsel to
supply the place of a record, and no good reason has been
advanced in this case for making an innovation upon the
rule.

By the Court, MASSEY, J.:

This action was instituted by the respondent, a stockholder,
for the benefit of all the stockholders of the National Nickel
Company, a corporation, organized and existing under the
laws of the State of Illinois, against the appellant, a corpora-
tion, organized and existing under the laws of the kingdom
of Great Britain, for the purpose of setting aside a certain
alleged conveyance made by the president and secretary of
the National Nickel Company to the appellant, of certain
mining claims in Churchill county, Nevada, which convey-
ance is alleged to have been made without authority. The
National Nickel Company was made a party defendant to
the action, but is not a party to this appeal. Summons was
issued on the 2d day of October, 1896, delivered to the sheriff
of Ormsby county, Nevada, on the 3d day of October, 1896,
and returned by him on the same day, with a certificate of
service to the effect that he had served the same on the defend-
ants by personally delivering a true copy of the same,
attached to a copy of the complaint, to Eugene Howell,
secretary of state, at Ormsby county, the defendants having
no agents in the state upon whom service could be made,
who could be found in the said county. No appearance
having been made, the default of the appellant was entered
on the 17th day of November, 1896, and on the 16th day of
December, 1896, decree was made as prayed for. On the
15th day of December, 1897, this appeal was taken from
the judgment and decree. The respondent, upon a showing
that before this appeal had been taken the appellant had

appeared in the lower court, and asked that the judgment be vacated for certain specified reasons, and that subsequently, on January 3, 1897, the district court had sustained appellant's motion and made an order vacating and annulling the judgment, from which order the respondent had appealed, asks us to dismiss this appeal. At the time the appeal was taken, a judgment was standing against the appellant, and the motion to set aside the same was undetermined. Our statute confers the right of appeal from a final judgment, upon any party aggrieved, within one year after the rendition thereof, and power is conferred upon the district courts, under certain restrictions, to set aside and vacate judgments. The right of appeal can be exercised at any time within the statutory limitation before the judgment is set aside or vacated by the district court. The appellant can, under our practice act, appeal from the judgment and prosecute such appeal in the appellate court, and at the same time prosecute a motion to vacate and set aside the judgment in the district court. These are separate remedies under the law, and the appellant may for one reason ask the court to vacate a judgment, and for an entirely different reason ask the appellate court to reverse or modify the same. If an appeal from the judgment operates as a vacation or suspension of the same, then such course would not be proper; but that the legislature intended the contrary is evident from those sections of the civil practice act regulating the method of stay of execution of judgment after appeal therefrom. (Gen. Stats. 3364–3367; *Rogers* v. *Hatch*, 8 Nev. 35.)

Questions analogous to the one under consideration have been decided by other courts under similar statutes regulating appeals from judgments, and proceedings and appeals from orders granting or denying new trials. The Supreme Court of California has held that the two modes of appeal are independent of each other, and that an appeal from the judgment does not depend upon a motion for a new trial, and may be taken without waiting for the determination of a motion for a new trial, and that even an affirmance of a judgment upon a direct appeal therefrom does not prevent the court below from setting aside the verdict or the findings. (*Carpentier* v. *Williamson*, 25 Cal. 168; *Spanagel* v. *Dellinger*, 38

Cal. 284; *Towdy* v. *Ellis*, 22 Cal. 659; *McDonald* v. *McConkey*, 27 Cal. 326; *Rayner* v. *Jones*, 90 Cal. 81; *Naglee* v. *Spencer*, 60 Cal. 10.)

This statutory rule is based upon sound reason. Should the appellant be required to await the determination of a motion to vacate the judgment, he might lose his right of appeal therefrom by expiration of time in which such appeal could be taken, and thereby his right to have reviewed any errors appearing in the judgment roll. Upon the showing made, and for the reasons given, the motion to dismiss the appeal will be denied.

The first objection made to the validity of the judgment, based upon defects appearing in the judgment roll, is that no summons was ever issued in the action—that the paper purporting to be a summons is void for the reason that it runs in the name of "The People of the State of Nevada." Section 13, article VI of the constitution requires that the style of all process shall be "The State of Nevada." Is a summons issued under our law a process within the meaning of the provision of said article?

Under our practice act, which has been in force since 1869, provision is made for the issuance of summons to be signed by the attorney for the plaintiff, or by the clerk, and, when issued by the clerk, requiring that it shall be under the seal of the court. The same act specifically defines the contents of the same. There is nothing in the act requiring the summons to run in any particular form. It has never been treated as a process within the meaning of our constitution either by the legislature or the courts, and, while there is conflict of authority upon a similar question, under constitutions and statutes similar to our own, in other states, we are disposed to hold that a summons is not a process, within the meaning of our constitution. Upon this point we quote from a decision of the Supreme Court of Colorado, in which it says: "As to the first point raised—that the summons is such a process as may be issued in the name of the people of Colorado—we are strongly inclined to follow the conclusion of the Supreme Court of Florida in *Gilmer* v. *Bird*, 15 Fla. 411. In this case the identical question here presented is discussed at some length—that is, 'that the summons, as

authorized by the code, is a " process," within the meaning of the constitutional provisions which require the style of all process to be the " State of Florida ";· that the summons had no such style; that this was essential to the validity of the judgment, there having been no appearance.' And the court said: ' But is a notice given by an attorney of the institution of a suit, in a form similar to a summons, but not issuing out of a court, a " process " within the meaning of the constitution? Baron Comyn, in giving the definition of the term " process," says it imports the writs which issue out of any court to bring the party to answer, or for doing execution. There is no definition of " process," given by any accepted authority, which implies that any writ or method by which a suit is commenced is necessarily " process." A party is entitled to notice and to a hearing under the constitution before he can be affected, but it is nowhere declared or required that that notice shall be only a writ issuing out of a court.' " (*Comet Consolidated M. Co.* v. *Frost*, 25 Pac. (Col.) 506; *Hanna* v. *Russel*, 12 Minn. ·80; *Bailey* v. *Williams*, 6 Or. 71; *Nichols* v. *The Plank Road Co.*, 4 G. Greene, 44.)

The appellant also claims that, under the provisions of the act approved February 25, 1889 (Stats. 1889, p. 47), requiring certain corporations named therein to appoint and keep agents upon whom service of summons can be had in this state, and providing that upon failure to make such appointments, service may be made upon the secretary of state, the judgment is void, for the following reasons: First, that it does not appear from the judgment roll, that the appellant, a foreign corporation, owned any property or did any business within this state; second, that the judgment roll fails to show that the appellant had no agents within this state upon whom service of summons could have been made.

The first contention is sufficiently answered, if the allegations of the complaint are taken as true, by the fact that the appellant was the owner of the mining claims named in the alleged conveyance set up. If, as contended by appellant, the alleged conveyance is in fact a mortgage upon property, then it is sufficiently shown thereby that the appellant was loaning money upon property situated within this state,

and such acts constitute "doing business," within the meaning of said statute.

The second claim of the appellant raises for the first time in this court the application of the act of 1889, *supra.* Under section 3050, General Statutes of 1885, the service of summons must be made by the sheriff of the county where the defendant is found, or by his deputy, or by any citizen of the United States over twenty-one years of age. When the service has been made by the sheriff or deputy, it must be returned, with a certificate or affidavit of its service, and of the service of the copy of the complaint. The succeeding section of the same act requires, among other matters, that, in case the suit be against a foreign corporation doing business in this state, service of summons may be made upon an agent, cashier, secretary, president, or other head thereof. Section 3052 of the same act provides that when the person on whom the service is made resides out of the state, or, being a corporation, cannot be served as provided in the preceding section, and the fact shall appear by affidavit to the satisfaction of the court or judge thereof, and in like manner certain other matters are shown, then an order shall be made for service of summons by publication. The method of procedure marked out by the provisions of these sections has been in force since 1869, and remained unchanged until the passage of the act of 1889, *supra*, giving an additional mode or manner of serving process upon foreign corporations as defined in that act. Under the provisions of the act of 1869, courts of this state could acquire jurisdiction over foreign corporations doing business in the state by following the statutory rules for service of summons by publication, where no agent or other officer was found in the state upon whom service could be made; but the power of the court, in cases of default, was limited, under well-settled rules, which require no citations in their support, to render judgments *in rem.* Under these statutes foreign corporations might come into the state, transact business, and commit wrongs against its citizens, for which the only remedy was a personal action for damages, and, before service could be made upon the agent or other officer named in the statute, such agent or officer could withdraw from the jurisdiction of the state, and

leave the injured person practically without remedy. The act of 1889, construed with the provisions of the act of 1869, was evidently intended to cure this defect.

Without entering into a discussion as to the power of the legislature to pass the act of 1889, regard for the rights of property and person require that such act should be strictly complied with before the courts assume jurisdiction. The statute of 1889, under which service of summons was made in the case at bar, authorized such service upon the secretary of state in the event of the failure of the appellant to appoint and keep an agent within this state, upon whom such service could be made, and such facts should be affirmatively shown by the record. (Works' Courts and Their Jurisdiction, p. 291; *Miller* v. *Norfolk & W. R. Co.*, 41 Fed. Rep. 431; *Jennings* v. *Crofton*, 9 S. W. 406.)

The requirements of the act of 1889 are, in effect, that every foreign corporation doing business or owning property within this state shall appoint and keep in this state an agent upon whom all legal process may be served, and in case of their failure to comply with these requirements, then service of process may be made upon the secretary of state. Applying the strict letter of the rule to the case at bar, has such showing been made by the record as to confer jurisdiction over the appellant? The record shows that the appellant is a foreign corporation doing business in this state. It further shows, by the certificate of the return of the sheriff, that process was duly served upon the secretary of state. It further shows that there were no agents of the appellant, as required by the statute, within Ormsby county, and any attempt of the sheriff to show by his certificate that there were no agents of the appellant in any other of the thirteen counties of the state would be in excess of his power, under the statute authorizing his return. This last showing is not sufficient. The statute does not require that the appellant shall appoint or keep the agent in any particular county, and before the court could acquire jurisdiction over the appellant by the attempted service, the record should show that the appellant had not appointed any agent upon whom service could be made as required by the act, and that it had not kept such agent within the state. Suggestions have been

made by counsel as to the manner in which the showing of these facts shall be made. The statute fails to prescribe any method of procedure, and, in the absence of any prescribed method, we can only suggest that all jurisdictional facts under this statute should be made to appear in the judgment roll.

Objections have also been made to the sufficiency of the complaint to support the judgment, but, as any such defects therein can be cured in the lower court by amendment, we do not deem it necessary to pass upon the same.

The judgment will be reversed.