## DODGE BROS., INC., *v.* GENERAL PETROLEUM CORPORATION OF NEVADA

No. 2984

April 23, 1932.                    10 P.(2d) 341.

*Thatcher & Woodburn,* for Appellant.

*A. L. Haight,* for Respondent.

## OPINION

By the Court, SANDERS, J.:

This is an appeal from an order of injunction pendente lite and from an order refusing to dissolve or modify the injunction after a full hearing had in the court below for that purpose. Since appeal the appellant, who was the defendant in the action, has petitioned this court for a writ or order staying all proceedings under the injunction. The injunction order reads as follows:

"The plaintiff in the above-entitled cause having this day commenced an action in the First Judicial District Court of the State of Nevada, in and for Ormsby County, against the above-named defendant, and having prayed for an injunction against the said defendant requiring it to refrain from certain acts in said complaint and hereinafter mentioned; On reading the complaint in said action, duly verified by the oath of Carl F. Dodge, and it satisfactorily appearing to me therefrom that it is a proper case for an injunction and that sufficient grounds exist therefor, and the necessary undertaking having been given; It is therefore ordered by me, Clark J. Guild, the judge of said District Court, that until further order in the premises, you, the said General Petroleum Corporation of Nevada, defendant herein, and each and every of your attorneys, officers, servants, employees and agents, and all others acting in aid or assistance of you, do absolutely desist and refrain from:

"(1) Refusing or failing to promptly ship to the plaintiff at Reno, Nevada, the car of 'Motogas' third structure gasoline ordered by the plaintiff on March 9, 1932,

as alleged in the complaint, or any further supply of such commodity which the plaintiff may hereafter order;

"(2) Imposing any conditions or restrictions upon shipment or delivery of any of defendant's products ordered by plaintiff or upon payment therefor except as outlined in letter or memorandum set out in paragraph VII of the complaint herein and dated December 29, 1930;

"(3) Threatening or attempting to terminate any contract heretofore made between the plaintiff and defendant or from giving any notice or commencing any act indicating an intention to so do;

"(4) In any manner interfering with, interrupting, impeding or disrupting the plaintiff's business or preventing its orderly conduct as set out in plaintiff's complaint or otherwise;

(5) And/or committing any breach whatsoever of the contracts set out in the complaint herein according to the legal effect thereof as pleaded or otherwise."

It is impossible to read the order without seeing plainly that, while it is prohibitive in form, it is mandatory in its effect. It commands the appellant to absolutely desist and refrain from doing five specific acts.

The court is of the opinion that an order staying the proceedings under the injunction pending appeal should issue. It is therefore ordered and adjudged that the proceedings in that certain suit entitled "Dodge Bros., Inc., a Nevada Corporation, Plaintiff, v. General Petroleum Corporation of Nevada, a Nevada Corporation, Defendant," upon that certain order of injunction made and entered on the 12th day of March, 1932, and that certain order made and entered on the 25th day of March, 1932, refusing to dissolve said injunction, be and the same are hereby stayed until the final determination of the merits of the litigation on appeal, unless the said petroleum corporation shall fail and neglect to execute and file with the clerk of the lower court a good and sufficient stay bond in the amount to be fixed by the

lower court or the judge thereof within five days from the entry of the order fixing the amount of such stay bond.

It is further ordered that in case of the failure of said petroleum corporation to execute and file said bond within the time mentioned, then the stay herein ordered shall no longer be of force and effect.

The members of the court concur in the order, but differ in the reasons which lead to that decision. The writer is influenced to concur in the order upon the authority of the following cases: Lovelock Merc. Co. v. Lovelock Irr. Dist., 51 Nev. 179, 272 P. 1; State v. Ducker, 35 Nev. 214, 127 P. 990; Silver Peak Mines Co. v. Second Judicial Dist. Court, 33 Nev. 97, 110 P. 503, Ann. Cas. 1913D, 587; Brooks v. Nev. Nickel Syndicate, 24 Nev. 311, 53 P. 597; 3 C. J. 1924, sec. 1420; 3 C. J. 1281, sec. 1405.

COLEMAN, C. J., concurring:

I concur in the order on the authority of State v. Ducker, 35 Nev. 214, 127 P. 990. The application for the stay order was based solely upon the theory that the injunction is mandatory in effect.

DUCKER, J., concurring:

I concur in the order.

The injunction in this case, though preventive in form, is mandatory in effect. Injunctions of this character are classed as mandatory injunctions. Delaware, L. & W. R. R. Co. v. Central Stock-Yard Co., 43 N. J. Eq. 71–75, 10 A. 490; County Commissioners of Washington County v. School Commissioners of Washington County, 77 Md. 283, 26 A. 115, 116.

In form the injunction before us restrains acts or threatened acts which are summed up in paragraph 5 thereof as follows: "And/or committing any breach whatsoever of the contracts set out in the complaint herein according to the legal effect thereof as pleaded or otherwise."

It will be readily seen that the effect of these restraints is to compel the company to perform the contract.

A "preventive injunction" is one that restrains the commission or continuance of some act of the defendant, while a "mandatory injunction" is one that requires him to do a particular act which is not merely incidental to the main purpose of the order. Goodrich v. Georgia R. & B. Co., 115 Ga. 340, 41 S. E. 659.

Commanding the performance of the contract is not an incidental feature of the temporary injunction in this case, but is its sole purpose. Such being the purpose of the injunction, it is mandatory.

It has been decided by this court that on an appeal from a temporary mandatory injunction the appellant is entitled as a matter of right to a stay of proceedings under the injunction upon the filing of a proper stay bond. State v. Ducker, 35 Nev. 214, 127 P. 990.

## ON THE MERITS

August 5, 1932.          13 P. (2d) 218.

*Thatcher & Woodburn,* for Appellant:

*A. L. Haight,* for Respondent:

# OPINION

*Per Curiam:*

This is an appeal from an order granting a mandatory injunction and refusing to dissolve said injunction. The appeal was taken by the General Petroleum Corporation of Nevada, a Nevada corporation. The action was instituted against said petroleum company in the lower court by Dodge Bros., Inc., a Nevada corporation, respondent here, and the controversy arose out of certain contracts entered into between these corporations on the 7th day of April, 1930. The contracts in question are set out in the complaint filed by respondent. Appellant demurred to the complaint, and moved the lower court to dissolve the injunction, upon the grounds that it was improvidently issued for the reason that the complaint failed to state facts sufficient to constitute a cause of action or to entitle the plaintiff to the relief demanded therein, upon the ground that plaintiff, respondent here, had repeatedly breached the contracts, and that defendant had the right to terminate the contracts and refuse to make delivery thereunder. The demurrer was overruled and the motion to dissolve denied.

It is provided, in substance, in one of the contracts that respondent should investigate and recommend to appellant distributors for its petroleum products within the State of Nevada, and respondent agreed, after the appointment of such distributors, to give its personal attention to the sale and distribution of appellant's products. Appellant agreed to allow respondent a commission on its products sold to distributors recommended by it.

A further contract was entered into on the same day by the parties, whereby appellant agreed to sell and respondent agreed to purchase all gasoline and automobile oils and greases which respondent sold in a certain

territory in Nevada. Respondent agreed to devote itself exclusively to the sale of appellant's products, or to appoint a manager, at all times acceptable to appellant, who would devote all of his time to such business. Respondent also agreed not to combine this agency with any other business during the existence of the contract, except with the written consent of the appellant. Respondent agreed to sell a certain amount of gasoline and motor oils within the territory named. The prices to respondent were to be based upon appellant's tank wagon prices. Payment was to be made on demand of appellant. Appellant reserved the right to cancel the contract on twenty-four hours' notice if respondent failed to perform any of its obligations, or violated any of the terms of the contract, or if the sales of respondent fell below the sales quota in its territory, or should respondent's credit become so impaired that appellant should not deem it desirable to make further deliveries. The contract also provided that waiver of any default by appellant would not constitute a waiver of a continuance thereof, or of any subsequent default. After the execution of the contract, the following letter was written by appellant's division manager to respondent's president:

"San Francisco, Cal., Dec. 29, 1930.

"Mr. Carl Dodge, Distributor
    "Fallon, Nevada
"Dear sir:

"This will confirm the understanding arrived at today in conversation between you, Mr. Rich, Mr. Weil, and the writer as related to the basis of payment to be made by Dodge Brothers, Incorporated, under agreements dated April 7, 1930, covering Fallon and Reno activities.

"The agreement as outlined in Paragraph 17 specifically outlines that in each instance there is consigned to you two (2) tank cars of gasoline. This letter is to change that portion referred to above and in lieu thereof the following will be the arrangement: On or before the 10th of January, 1931, you are to pay your account in full up to November 1, 1930, and during the month of January you are to make such further remittances

as your receipts will permit. On or before February 10 you are to pay us the balance remaining as of November 30, 1930, and subsequently on or before the 10th of each succeeding month you are to pay us in full the amount standing to your debit as of the close of business on the third preceding month: i. e. on or before March 10th you are to pay the balance as of December 31. On or before April 10 the balance as of January 31st, et cetera.

"In order that our records may be complete, will you kindly sign and return the attached copy of this letter in token of your agreement with the foregoing, and oblige,

"Yours very truly,
"J. F. Walsh, Division Manager."

It will be seen that this letter, the terms of which are accepted by respondent, gave respondent seventy days' time in which to make payment for products purchased under the contract.

On February 12, 1932, appellant advised respondent that it had terminated all the provisions of the letter of December 29, 1930, and would not extend further credit, but that respondent would be held to the terms of the original agreement.

Thereafter respondent ordered certain cars of gasoline, and these cars were shipped with the agreement that payment therefor should be made immediately upon receipt of the gasoline at the destination. On March 9, 1932, the respondent ordered a certain car of "Motogas," which was a product that had not before been supplied to the respondent or sold by appellant. This order was not filled prior to the filing of this suit.

On March 10, 1932, Carl Dodge, the president of respondent company, requested that a car of gasoline be immediately sent to Fallon. The appellant demanded cash or the equivalent therefor, and Dodge stated that it would be agreeable to forward the car with sight draft, bill of lading attached. This was done.

The complaint in this action was filed by respondent, and the injunction heretofore mentioned issued out of the lower court. By the terms of the injunction appellant was required to ship the car of "Motogas" ordered

by respondent on March 9, 1932, and to ship any further supply of such commodity which respondent might thereafter order. Appellant was further restrained from imposing any restrictions upon shipment or delivery of any of its products ordered by respondent, or upon payment therefor, except as outlined in the letter of December 29, 1930, and was further restrained from committing any breach whatsoever of the contracts set out in the complaint.

Appellant has presented a number of points which it claims are against the issuance of an injunction in this case. Among these points are alleged several breaches of the contracts by respondent which appellant insists that by the terms thereof it was authorized to cancel the same. We are satisfied that one of the latter contentions must prevail, and will therefore not discuss or determine the other points made by appellant.

The point we decide is that appellant was authorized to cancel the contracts under the reservations made therein in regard to respondent's credit becoming impaired. As previously indicated, the contract contained the following provisions: "Genpet reserves the right to cancel this contract on twenty-four (24) hours' notice in writing for any of the following reasons: (b) Should buyer's credit become so impaired that Genpet should not deem it desirable to continue deliveries hereunder."

The appellant is designated in the contract in which this condition appears as "Genpet."

The evidence in respect to the above condition of the contract, adduced on the part of appellant at the hearing on motion to dissolve the injunction, shows that respondent on each month of the year 1931 and until February 10, 1932, was behind in payments required by the contract. The payments were overdue during this time from one to thirty-one days. The evidence also shows that during this time the appellant was constantly writing respondent urging payment. It further appears that appellant had tried to get a statement from respondent as to its affairs. Such statement was not

produced until the trial of the case, and showed, as of December 31, 1931, $1,269.82 cash on hand. No further statement was furnished by appellant.

Respondent contends that the fact that it was in arrears in payment as stated, is no evidence that its credit was impaired and that appellant offered no testimony showing such impairment of credit.

The proof of arrears in payment, extending over the time mentioned, and of appellant's insistence throughout upon payment in accordance with the terms of the contract, might not be sufficient evidence of impairment of respondent's credit if that was a question for the trial court to determine. But we do not so consider it. That is not the effect of the condition in the contract. It will be seen by reference to said condition that appellant has reserved to itself the right to judge as to the impairment of respondent's credit. And as appellant has concluded that respondent's credit has become so impaired that it is not desirable to continue deliveries under the contract, the only inquiry is whether the evidence presents reasonable grounds for such conclusion. The legal effect of the condition in the contract is that respondent was obliged to maintain its credit to the satisfaction of appellant. We hold that under the condition there must be a proper basis in the evidence for the exercise of the right to terminate the contract before it could be authorized, and that such appears in the record. In other words, the evidence shows that appellant was not acting in bad faith, but that its dissatisfaction with the soundness of respondent's credit was a fact and not pretense.

Respondent stresses a statement which the president of the respondent company testified was made by Mr. Bowman, assistant general sales manager of the appellant company, that they could cancel the contracts by taking the position that respondent's credit was impaired; that of course they knew it was not impaired, but they were the sole judges whether or not it was impaired. It is sufficient to say that any probative value this statement may have as tending to show credit

standing is entirely neutralized by the averments concerning this phase of the case in the affidavit of Mr. Walsh, division manager of the appellant company, offered by appellant on the hearing of the motion to dissolve the injunction. These averments are as follows: "Affiant further, on behalf of defendant, alleges that said contracts between the parties, as described in the complaint, reserves to this defendant the right to cancel said contracts and each of them on twenty-four hours notice in writing for any of the reasons set forth therein; that defendant desires, intends to, and will cancel said contracts and give the notice of such cancellation as required by said contracts, the order or orders of this court permitting, and affiant, on behalf of defendant alleges that the buyer's credit has become so impaired and/or unsatisfactory in the opinion of the defendant that the defendant does not deem it desirable to continue deliveries under said contract."

We do not share respondent's view that the fact that appellant continued to do business during all of the periods when payments were late, demonstrates that it did not consider belated payments as tending to show impairment of credit. Such an inference is not legally deducible from that fact. Appellant had the option under the contract to waive any default without the same constituting a waiver of continuance thereof or of any subsequent default. That it may have waived acting on evidence tending to convince it that respondent's credit was not satisfactory to it will not support an inference that it deemed such credit satisfactory.

It is ordered that the orders of the lower court granting the injunction and refusing to dissolve it on appellant's motion be and they are hereby reversed, and the temporary injunction granted herein be and the same is hereby dissolved.

### ON PETITION FOR REHEARING

September 22, 1932.

*Per Curiam:*

Rehearing denied.