THEODORE A. LAUER, RULOFF E. CUTTEN AND CITY BANK FARMERS TRUST COMPANY, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF EDWARD E. B. ADAMS, PETITIONERS, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE GEORGE E. MARSHALL, THE PRESIDING JUDGE THEREOF, RESPONDENTS.

No. 3388

September 9, 1943.                    140 P. (2d) 953.

*Thatcher & Woodburn* and *William J. Forman,* all of Reno, and *McNamee & McNamee,* of Las Vegas, for Petitioners.

*Chas. Lee Horsey, of Las Vegas,* and *Austin Sherman,* of Los Angeles, Calif., for Respondents.

## OPINION

By the Court, TABER, J.:

December 28, 1938, in the Eighth judicial district

court, Clark County, Elizabeth C. Adams commenced suit for divorce against Edward E. B. Adams on the ground of extreme cruelty. On the same day an answer to the complaint was filed on behalf of the defendant, and on the following day the case was tried and a decree of divorce rendered and entered in favor of plaintiff.

August 23, 1941, defendant died testate in the State of New York, leaving a large estate therein, and on September 9, 1941, petitioners herein were appointed and qualified as executors of his will.

May 11, 1942, plaintiff noticed a motion for an order vacating said decree of divorce on the ground that, not desiring a divorce, she had been fraudulently induced by threats of scandal to obtain one, so that in the event of her husband's death she would not be entitled, under the laws of the State of New York, to elect to take one half of his estate. See McKinney's Consolidated Laws of New York, Annotated, Book 13, Decedent Estate Law, sec. 18. In support of this motion she filed an affidavit setting forth alleged facts and circumstances constituting, as she contends, extrinsic fraud. In her affidavit it is stated that she first learned of the existence of said New York law in February 1942, when so advised by her California and New York attorneys; and that her New Jersey and Nevada attorneys, respectively, first learned of said law in February and March 1942.

July 1, 1942, the executors filed written objections to the assuming or exercising of any jurisdiction by the district court with regard to and in respect to plaintiff's notice of motion to vacate judgment. One of the grounds of objection was that the district court had lost jurisdiction in the divorce case by lapse of time after rendition and entry of judgment, since more than six months had elapsed, and said court did not expressly or otherwise retain jurisdiction; that the assuming or exercising by said court of any jurisdiction in reference to said motion would be in violation of district court rule XLV.

July 10, 1942, executors' jurisdictional objections were

argued, and by the court overruled. The court then proceeded to hear plaintiff's motion on the merits, and documentary evidence was introduced in her behalf. The executors, who had been substituted as parties defendant, did not offer any testimony or evidence. The motion was argued, and on August 4, 1942, the court vacated the decree of divorce. August 13, 1942, the executors served and filed notice of intention to move for a new trial.

August 14, 1942, the executors noticed a motion for an order granting a rehearing of plaintiff's motion to vacate and set aside said decree. The grounds for this motion were, in part, "that defendant's executors, through mistake, inadvertence, surprise and excusable neglect, were prevented from presenting a full and adequate defense on the merits to the said motion, and upon the ground that defendant's executors have a full, complete and meritorious defense to said motion on the merits thereof, and upon the further ground that the above named Court was without jurisdiction to make and enter said order vacating the decree of divorce in the above entitled action * * *." The supporting affidavits showed, among other things, that one member of the Las Vegas firm which had been handling the executors' case in conjunction with eastern attorneys, was suddenly called into the military service; that the only other member of said firm was not familiar with the case, nor advised concerning the correspondence which had taken place between his partner and the eastern attorneys; and that by reason of the foregoing, and of other facts and circumstances not necessary to be detailed here, the executors were prevented from presenting a full and adequate defense on the merits to plaintiff's motion to vacate the decree of divorce. The executors also presented alleged facts purporting to show that they had meritorious defense to said motion.

The motion for a new trial and the motion for rehearing came on to be heard August 28, 1942, and on October 2, 1942, the motion for a new trial was denied, but

the motion for a rehearing was granted. In granting the rehearing the court did not expressly rule again on the jurisdictional objections. In his written decision granting the rehearing the district judge said, "the Court is satisfied that the defendants could have introduced evidence in opposition to the affidavit of Elizabeth C. Adams, and that the best interests of justice will be subserved by permitting the substituted defendants to appear and present such evidence as they may have going to the merits of the case."

On January 22, 1943, the executors, in the present proceeding, applied for a writ of prohibition asking that the district court be forever restrained from taking any further proceedings in said divorce action respecting the decree of December 29, 1942. Petitioners base their application upon the ground that the district court has no jurisdiction over either the subject matter mentioned in plaintiff's notice of motion to vacate the divorce decree, or of the executors in that proceeding, for the following reasons: "(1) Said notice of motion was not given within six months after the time when said judgment and decree of divorce was rendered in said action No. 8971, and said judgment and decree of divorce contained no reservation of jurisdiction whatsoever, and that for said Eighth Judicial District Court of the State of Nevada, in and for the County of Clark to assume jurisdiction over said proceeding would be in violation of Rule XLV of Rules of the District Court of the State of Nevada; (2) The facts set forth in affidavits served with said notice or any facts set forth in any affidavits or proof made upon the motion for rehearing of said motion are wholly insufficient to constitute a ground for setting aside said judgment and decree of divorce rendered in said district court on the 29th day of December, 1938."

The main question in this proceeding is whether the lower court, in setting aside the divorce decree, acted without or in excess of its jurisdiction. There are cases in which a district court may set aside its judgment in

a separate action commenced more than six months after the judgment was rendered; but the question confronting us here is whether the lower court was within its jurisdiction in setting aside the divorce decree on motion in the original action. The practice in proceedings and actions to vacate judgments is in many respects so conflicting in the different states that few rules can be laid down as universally applicable. Freeman on Judgments, 5th Ed., vol. 1, p. 376. It is important, therefore, that in this case we concern ourselves with the practice in our own state.

In the early days of Nevada when there were terms of the district courts it was held, in accordance with the universal rule, that during the term in which a judgment was rendered the court had complete control of it, and upon a proper showing could unquestionably set it aside. Ballard v. Purcell, 1 Nev. 342, 344. It was also held, with some exceptions, that a judgment could not be set aside or substantially modified by such courts after the term at which it was rendered. Daniels v. Daniels, 12 Nev. 118, at page 121; Sweeney v. Sweeney, 42 Nev. 431, at page 438, 179 P. 638.

■ Terms of the district courts were abolished in 1885, but in 1887 district court rule XLV was adopted, which, in its present form, reads: "No judgment, order, or other judicial act or proceeding, shall be vacated, amended, modified, or corrected by the court or judge rendering, making, or ordering the same, unless the party desiring such vacation, amendment, modification, or correction shall give notice to the adverse party of a motion therefor, within six months after such judgment was rendered, order made, or action or proceeding taken." This court rule was adopted to take the place of the former rule requiring motions to vacate judgment to be noticed during the terms at which they were rendered. See In re Ralph's Estate, 49 Ariz. 391, 67 P. 2d 230; and cf. Becker v. Loebs Ins. Agency Co., 304 Ill. App. 575, 26 N. E. 2d 653.

■ By virtue of district court rule XLV, judgments,

which formerly could not be set aside by a district court after the expiration of the terms at which they were rendered, cannot now be set aside by motion noticed more than six months after they are rendered. The court rule fixes a definite time limit within which judgments may be so vacated or substantially altered. Lindsay v. Lindsay, 52 Nev. 26, 280 P. 95, 67 A. L. R. 824; Crowell v. Second Judicial District Court, 54 Nev. 400, 19 P. 2d 635.

■■  Rule XLV does not apply to a judgment void on its face, but it is not contended that such a judgment is under consideration here; the judgment roll is, in all respects, regular on its face. Nor does said rule apply to separate or independent suits brought to set aside judgments. It only applies to motions in the original or principal case to vacate, amend, modify or correct judgments, orders, or other judicial acts or proceedings therein.

Under some circumstances and for some purposes, district courts may retain jurisdiction of actions after the expiration of six months from rendition of judgment. State ex rel. Jones v. Second Judicial District Court, 59 Nev. 460, 96 P. 2d 1096, 98 P. 2d 1096; Lewis v. Lewis, 53 Nev. 398, 2 P. 2d 131. The instant case does not come within these or any other exceptions to the six months' rule.

■  District courts have the inherent power to set aside judgments procured by extrinsic fraud, and respondents contend that the time for exercising such jurisdiction by motion in the original cause cannot be limited by a rule of court. They argue: (1) That the district court could not oust itself of jurisdiction by merely adopting rules; (2) that rule XLV pertains to discretion rather than absolute jurisdictional limitation; (3) that rule XLV does not attain the dignity of statutory law or substantive law; and (4) that rule XLV is in conflict with the law that the district court has the inherent power to set aside a decree rendered by it on the ground of fraud.

■ Court rules, when not inconsistent with the constitution or laws of the state, have the effect of statutes. Lightle v. Ivancovich, 10 Nev. 41; Haley v. Eureka County Bank, 20 Nev. 410, 22 P. 1098; Brooks v. Nevada Nickel Syndicate, 24 Nev. 264, 52 P. 575; Id., 24 Nev. 311, 53 P. 597; Beco v. Tonopah Extension M. Co., 37 Nev. 199, 141 P. 453. As we interpret said rule XLV, it does not purport to take away or lessen the jurisdiction of district courts to set aside judgments procured by extrinsic fraud. It does not add, nor does it take away, any grounds for vacating or setting aside judgments. Its effect, when applied to cases like that at bar, is simply to require that such jurisdiction, when invoked more than six months after rendition of judgment, must be exercised in a separate action, not by motion in the action wherein the judgment was rendered. It is one of the rules of practice and procedure for the government of the district courts, adopted pursuant to sec. 590 of the civil practice act of 1869, Stats. of Nevada, 1869, chap. CXII, pp. 196, 286. See sec. 8377, N. C. L. 1929, and 19 Nev. 21–23. Cf. Carmichael v. Schaefer Heights Land Co., 217 Mich. 420, 186 N. W. 481. In Brooks v. Nevada Nickel Syndicate, supra [24 Nev. 264, 52 P. 576], it was said: "There being no statutory rule regulating the practice in these matters, this rule has the force and effect of a statute." There being no statute in this state regulating the practice on motions to vacate judgments on the ground of fraud, and in view of the Lang Syne and Stimson cases hereinafter cited, we hold that it is within the province of a court rule to limit the time for noticing such motions, and that said court rule applies to them.

■ The court is familiar with the rule laid down in McGuinness v. Superior Court, 196 Cal. 222, 237 P. 42, 40 A. L. R. 1110, and similar holdings in some other jurisdictions (see 27 C. J. S., Divorce, sec. 169, p. 808, note 18); but a review of our own decisions convinces us that under the law of this state, when an application is made in a district court to vacate a judgment upon

the ground that it was procured by extrinsic fraud, it cannot be made by motion in the original cause noticed more than six months from the rendition of the decree.

We have already seen that when there were terms of the district courts in this state it was held, with some exceptions not applicable here, that a judgment could not be set aside or substantially modified by such courts after the term at which it was rendered. Similarly, since the adoption of district court rule XLV, it has been uniformly held, with some exceptions not applicable in this case, that a judgment cannot be vacated or substantially modified on motion in the original cause noticed more than six months after its rendition. Crowell v. District Court, 54 Nev. 400, 19 P. 2d 635; Lindsay v. Lindsay, 52 Nev. 26, 280 P. 95, 67 A. L. R. 824. The decisions in these two cases were based upon said court rule. In neither of them, however, was the judgment sought to be vacated on the ground of fraud, and the same is true of the Daniels and Sweeney cases cited heretofore in this opinion. None of them, therefore, constitutes a complete answer to respondents' contention. But there are at least two other cases which show that the "term of court" rule and the "six months" rule, respectively, apply also to cases wherein the judgment is attacked on the ground of fraud: Lang Syne Gold Min. Co. v. Ross, 20 Nev. 127, 18 P. 358, 19 Am. St. Rep. 337, and Stimson v. Sixth Judicial District Court, 47 Nev. 156, 217 P. 588, 223 P. 823.

The Lang Syne case was an action in equity to set aside, upon the ground of fraud, the judgment, execution, certificate of sale, and deeds thereunder in another suit. Defendant Ross demurred to the complaint, one of the grounds of demurrer being that the court had no jurisdiction of the subject of the action, in that the complaint did not show that plaintiff used or exhausted its legal remedies. One of the legal remedies suggested by defendant Ross was that plaintiff could have moved to set aside the judgment taken against it through its mistake, inadvertence or excusable neglect. This court

said [20 Nev. 127, 18 P. 361, 19 Am. St. Rep. 337]: "The remedy by motion, if any existed, was not lost without any fault or negligence upon the part of plaintiff. The action, brought by Gould, was commenced September 9, the default was entered September 21, and the execution was issued October 16, 1882. The published notice of sale could not, therefore, have been seen by the president of plaintiff, in New York, earlier than the 21st of October, 1882. The term of the district court at which the judgment was rendered, expired on the 9th of October, 1882. Stats. 1879, 62. The statutory remedy by motion, in cases where there has been a personal service of the summons, is only available during the term at which the judgment is rendered. Daniels v. Daniels, 12 Nev. 118, and authorities there cited."

In the Stimson case [47 Nev. 156, 217 P. 589] the service of process was by publication. At that time section 142 of the civil practice act provided in part: "And when, from any cause, the summons, and a copy of the complaint in an action have not been personally served on the defendant, the court may allow, on such terms as may be just, such defendant or his legal representatives, at any time within six months after the rendition of any judgment in such action, to answer to the merits of the original action." (Said section 142, as amended, may be found at pp. 205, 206 of the 1939 Stats. of Nevada, chap. 154, and at p. 1192 of vol. 2 of the 1931–1941 Supp. to N. C. L.—sec. 8640, N. C. L. It does not, nor does any part of it, apply to the instant case.) About eleven years after rendition of a decree of divorce to the husband, the wife noticed a motion to have it vacated. In her supporting affidavit she stated that the order for publication of summons was obtained by fraud, in that at the time of making the affidavit upon which the order of publication of summons was obtained and at the time said order was obtained, plaintiff husband knew that she resided at Corvallis, in the State of Oregon, and that her post-office address was at that place; and that plaintiff's affidavit was false and

untrue, and was made for the purpose of concealing the pendency of the action, and obtaining a decree of divorce without her knowledge, and to conceal from the court her whereabouts and to prevent her from making a defense to the action. In their brief in the present proceedings respondents say that the wife's affidavit in the Stimson case presents intrinsic, not extrinsic fraud. We do not agree; her affidavit, in our opinion, presents a clear case of extrinsic fraud not only as to the wife, but upon the court as well. The husband objected to the court's hearing the motion, on the ground that it had no jurisdiction. His objection having been overruled, he applied for a writ of prohibition. This court, in the course of its opinion, said: "But it is strenuously insisted and argued on behalf of the respondents that where it is made to appear by motion that the judgment was obtained by the plaintiff's fraudulent and wrongful conduct in obtaining service of process, and where it is made to appear from the motion that the judgment is a fraud upon the defendant and upon the court, the court, in furtherance of justice and the preservation of the integrity of its own process, has the right, and it is its duty, to entertain the motion to vacate the judgment, independently of the statute." It was held, however, that the district court had lost jurisdiction when the order to vacate was made, that the wife's remedy by motion was gone, and that if she had any remedy it would be by separate action in equity. (In the following Nevada cases attacks on judgments upon the ground of fraud were made by separate action; Calvert v. Calvert, 61 Nev, 168, 122 P. 2d 426; Wade v. Wade, 41 Nev. 533, 173 P. 553; Nevada Consol. Min. & M. Co. v. Lewis, 34 Nev. 500, 126 P. 105; Lang Syne Gold M. Co. v. Ross, 20 Nev. 127, 18 P. 358, 19 Am. St. Rep. 337.)

■ In the present case the action of the district court in vacating the divorce decree was without jurisdiction and void. Daniels v. Daniels, 12 Nev. 118, 120.

In the foregoing discussion relating to jurisdiction, we have assumed that Mrs. Adams' showing in the lower court presents the case of a decree which she was induced, by means of extrinsic fraud, to procure. This assumption was for purposes of discussion only, and nothing herein is to be understood as indicating any opinion on the part of the court as to whether she has made out such a case.

Respondents contend that petitioners have waived the benefits, if any, of district court rule XLV by the appearances made and proceedings had in the district court. They cite Raps v. Raps, 20 Cal. 2d 382, 125 P. 2d 826, wherein it was held that where the husband moved to set aside a decree of divorce in favor of his deceased wife, the appearance in court of the attorney in behalf of the executrix for the purpose of challenging the jurisdiction of the court to entertain the motion on the ground that the court had no jurisdiction over the subject matter constituted a general appearance by the executrix notwithstanding that the attorney also interposed an objection to the jurisdiction of the person of the executrix. (In the instant case, besides the alleged loss of jurisdiction by lapse of time, the executors objected to the hearing of the motion to vacate upon the further ground that there had been no adequate, effective or sufficient service of the notice of motion.) A reading of the Raps case discloses that, under the California rule, the order vacating the decree of divorce was within the jurisdiction of the trial court. In the present case the order vacating the decree was without the trial court's jurisdiction, and void. In Stimson v. Sixth Judicial District Court, 47 Nev. 156, 217 P. 588, 589, 223 P. 823, this court said: "Whether the petitioner by resisting the motion appeared specially or generally is wholly immaterial, as we conclude that the respondent court is without jurisdiction to entertain the motion." If, as a matter of law, the jurisdictional objection based on the six months' rule could be waived under

any circumstances, we think there would be no waiver in this case because (a) the executors made their objection at the proper time, and also made it one of the grounds of their motion for a rehearing; and (b) they asked for no relief except what was proper and necessary in opposing plaintiff's motion.

In their return and answer, respondents say that petitioners are attempting to convert this proceeding for prohibition into a proceeding in certiorari or an appeal. Certiorari would not lie, because the executors could have appealed. But an appeal from the order vacating the decree would not have been adequate, because the executors had been excusably prevented from making a full and adequate showing on the merits of the motion. True, the executors could proceed with the rehearing, and appeal in the event of an adverse decision. But if this court should require that such a course be pursued, we would be directing the lower court to proceed, at great expense to the parties, with a matter which it has no power to hear. That court is as completely without jurisdiction to rehear the motion to vacate as it was to hear it in the first place.

It is ordered and adjudged that the alternative writ be made absolute.