UNITED STATES of America and Leila E. Pebles, Administratrix of the Estate of Frank R. Pebles, Deceased, Plaintiffs,

v.

UNITED AIR LINES, INC., a Delaware Corporation, Defendant.

UNITED STATES of America, Marjorie I. Matlock, and Mardale Matlock, by her Guardian ad Litem, Marjorie I. Matlock, Plaintiffs,

v.

UNITED AIR LINES, INC., a Delaware Corporation, Defendant.

UNITED STATES of America, Catherine B. Nollenberger, and Lawrence P. Nollenberger by his Guardian ad Litem, Catherine B. Nollenberger, Plaintiffs,

v.

UNITED AIR LINES, INC., Defendants.

UNITED STATES of America, Frances Lovina Thompson, Pernita C. Thompson, Milton Le Roy Thompson, and Phillip Edward Thompson, by their Guardian ad Litem, Pernita C. Thompson, Plaintiffs,

v.

UNITED AIR LINES, INC., a Delaware Corporation, Defendant.

UNITED STATES of America, Myrtle C. Theobald, and Carol Ann Theobald and Theresa Kay Theobald, by their Guardian ad Litem, Myrtle C. Theobald, Plaintiffs,

v.

UNITED AIR LINES, INC., a Delaware Corporation, Defendant.

Dwight M. BLACKWELDER, Jr., Executor of the Estate of Dwight M. Blackwelder, Deceased, Plaintiff,

v.

UNITED STATES of America and United Air Lines, Inc., a corporation, Defendants.

Warren G. KLEHFOTH, Executor of the Estate of Clara A. Klehfoth, Deceased, Plaintiff,

v.

UNITED AIR LINES, INC., a corporation, and the United States of America, Defendants.

Faith C. PARIS, as Executor of the Estate of Steve Paris, Deceased, Plaintiff,

v.

UNITED AIR LINES, INC., a corporation, Defendant.

Mary F. DARMODY, Administratrix of the Estate of Robert E. Darmody, Deceased, Plaintiff,

v.

UNITED AIR LINES, INC., a Corporation, Defendant.

Civ. Nos. 1817, 489 (Nevada), 297, 318, 320, 322, 324, 328, 1444 (Carson City), 487.

United States District Court E. D. Washington, N. D.

United States District Court D. Nevada.

Nov. 14, 1962.

Summary Judgment Procedure Dec. 7, 1962.

710

Frances C. Whelan, U. S. Atty., Donald Fareed, Asst. U. S. Atty., Los Angeles, Cal., for United States.

Ross & O'Connor, Boyle & Hetzner, Omaha, Neb., for Mary F. Darmody—Case No. 487.

Belli, Ashe & Gerry, Los Angeles, Cal., for Faith C. Paris—Case No. 1444.

Harvey Erickson, Spokane, Wash., for Leila R. Pebles—Case No. 489.

Johnson & Ladenberger and Margolis & McTernan, Los Angeles, Cal., for plaintiffs Matlock, Case No. 297; plaintiffs Nollenberger, Case No. 318; plaintiffs Thompson, Case No. 320; and plaintiffs Theobald, Case No. 322.

Chase, Rotchford, Downen & Drukker, Los Angeles, Cal., for United Air Lines.

HALL, District Judge.

The instant matters get before the undersigned by virtue of his assignment,

under 28 U.S.C. § 292(b), to the Eastern District of Washington where the Pebles case is pending, and to the District of Nevada where the remainder of the above entitled cases are pending, and by virtue of an Order made by the regular Judges of the Eastern District of Washington and an Order made by the regular Judges of the District of Nevada transferring all further proceedings in the instant cases to the undersigned.

To better point up the matters under consideration, a brief statement concerning the origin of these and other lawsuits growing out of the same mid-air collision is appropriate.

On April 21, 1958, at about the hour of 8:30 in the morning, a United Air Lines plane, flying its regular passenger run in the vicinity of Las Vegas, Nevada, and a United States Military F–100–F Jet plane collided in mid-air, killing all of the 42 passengers on the United Air Lines plane, the five members of the United Air Lines crew, and the two Air Force pilots in the Military Jet. Suits by the survivors of those killed in the accident were filed within the appropriate statutory periods in 11 different jurisdictions in the United States, and a suit was filed by United Air Lines against the United States, with a Cross-claim by the United States, in the District of Delaware for hull damage only. In the Ninth Circuit, 24 of the suits by survivor-heirs of some of the passengers who were killed were filed in the Southern District of California (22 against both the United Air Lines and the United States of America, two against United Air Lines only), seven in the District of Nevada, and one in the Eastern District of Washington.

Among them as plaintiffs in the Washington, Nevada and California cases were 17 widows with a total of 48 minor children from four months of age to 20 years, as well as other survivor-spouses and 14 children over majority.

Other suits by survivors were filed in the United States District Courts in Colorado, Florida, Iowa, Massachusetts, Missouri, Nebraska, New Jersey, New York, and one—the Paris case filed in the Northern District of Illinois—was later transferred to the District of Nevada and is one of the cases involved in the instant motions.

In view of the fact that, except for two very young school children who witnessed the accident from the ground, there were no eye witnesses, and that the plaintiffs had to prove their case "out of the defendant's mouth," discovery proceedings have been exceedingly extensive, expensive, and burdensome in time and effort. The discovery proceedings, whether depositions, interrogatories, or request for admissions, or inspection of documents and things, were noticed to the parties in all the instant suits (except Paris) and in the suits pending in the Southern District of California.

To avoid having 24 separate protracted trials with the possibility of conflicting verdicts on the question of liability, and the inconvenience, expense and delays to litigants, the Court, in the Southern California cases, on March 29, 1960, made an order under Rule 42(a), Federal Rules of Civil Procedure, consolidating all of the cases pending in the Southern District of California for trial on the issue of liability, with the issue of damages in each case to be tried to separate juries [F.R.C.P. 42(b)]. United Air Lines objected. The Court certified the question for an interlocutory appeal under 28 U.S.C. § 1292(b). On January 15, 1961, the United States Court of Appeals for the Ninth Circuit reversed the order of consolidation. The Nevada Wrongful Death Statute permits exemplary damages whether pleaded or not. The plaintiffs (appellees in the Appellate Court) filed waivers of exemplary damages in the Appellate Court on a request for rehearing which was denied on February 15, 1961. The Appellate Court held [9 Cir., 286 F.2d 302 at 306, cert. den. 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384] that the issue of liability and damages, exemplary "or normal" must be tried to the same jury. The parties indicated the evidence on liability would be the same in each case. (It is hard to see how

it could be different), so instead of 24 separate trials, the Court again made an order consolidating the Southern California cases for trial on the question of liability to one jury [Rule 42(a), Federal Rules of Civil Procedure], with the question of damages to be tried separately as to each plaintiff to the same jury. [Rule 42(b), Federal Rules of Civil Procedure].

In spite of the efforts of the Court to do everything possible to bring about an expeditious trial and prevent delays in the Southern California cases, and in spite of the very great diligence of counsel in their conduct of discovery proceedings, a pre-trial order could not be framed and a definite trial date set until October, 1961, at which time the cases were set for trial on February 6, 1962. The time then estimated for trial on liability was six weeks, but actually took 15 weeks. The trial commenced in the cases pending in the Southern District of California on February 6, 1962, with trial to the jury of plaintiffs' cases against United Air Lines, trial to the Court on plaintiffs' cases against the United States of America, and trial to the Court on the Cross-claims of United Air Lines and the United States against each other for indemnity or contribution. The Court submitted certain interrogatories to the jury, in an advisory capacity, as to the United States. Verdicts holding United Air Lines liable, and answering the interrogatories against the United States were returned on May 26, 1962, and the Court announced that it would, and it did, adopt the findings of the advisory jury and held the United States liable also. The parties thereafter proceeded to try each case separately to the same jury as to damages. This necessarily resulted in a delay in the findings of fact and conclusions of law on liability as to the plaintiffs' claims against the United States, and as to the Cross-claims of the United States and United Air Lines against each other. The Court, on August 14, 1962, filed its Memorandum on said Cross-claims, holding the United Air Lines and the United States in pari delicto, and that each was entitled to contribution, but neither to indemnity.

The last of the cases pending in the Southern District of California was submitted to the jury on the question of damages, and a verdict against United Air Lines returned on August 31, 1962. At that time, the jury was directed to return into court on November 2, 1962.

Since August 31, 1962, the Court's time from day to day, until recently, has been almost completely consumed with the arguments on liability to the plaintiffs by the United States, and settlement by the Court in prolonged hearings with counsel of the many details necessary to be incorporated in findings of fact and conclusions of law as to liability and damages against the United States, and findings of fact and conclusions of law on the Cross-claims of United Air Lines and the United States against each other.

As each verdict for plaintiffs against United Air Lines was returned on the question of damages, the Clerk was instructed, for obvious reasons, to record the verdict but to withhold the entry of judgment until the further order of the Court. Findings of Fact and Conclusions of Law and Judgment have been generally settled as to form on plaintiffs' cases against the United States, and on the Cross-claims of the United States and United Air Lines against each other, but have not been filed or entered. Some objections are still unsettled and pending, so that presently, no judgment has been entered in any of the Southern California cases, either as to United Air Lines or as to the United States of America, or on the Cross-claims. It is contemplated that as promptly as possible formal Findings, Conclusions and Judgments will be signed, filed, and entered in the Southern California cases.

■ There is before the Court the Pebles case pending against United Air Lines in the Eastern District of Washington, and in the Matlock, Nollenberger, Thompson, Theobald, Blackwelder, Klehfoth and Paris cases, all pending in the District of Nevada against United Air

Lines, a Motion by the individual plaintiffs and by the United States—a plaintiff in all but two of the above-mentioned cases [1]—for a change of venue to the Southern District of California and for limited consolidation on the question of liability *only* of all of the above-mentioned cases with each other and with the Southern District of California cases. The motions contemplate, and counsel for the movants indicate, that in the event such order of transfer and consolidation is made, they desire that the matter of the liability of United Air Lines in the instant cases be submitted for a single verdict to the same jury which heard the Southern California cases, with the opportunity to object to a juror or alternate for cause, on the same evidence adduced on that subject in the Southern California cases, and that, thereupon, the matter of damages in each of the instant cases would be tried separately to the same jury with separate verdicts and judgments.

In the Matlock, Nollenberger, Thompson, Theobald, Pebles, and Paris cases, the individual plaintiffs are suing as heirs of the decedents, each of whom was an employee of the United States, and the United States is suing as plaintiff to recover from United Air Lines the statutory compensation that it is and will be required to pay to those heirs, and for subrogation in such amounts, in event individual plaintiffs recover judgments, equal to or in excess of the amounts the United States will be required to pay. United Air Lines has answered and counter-claimed in each of said cases for indemnity against the United States for any sums that it may be required to pay for the wrongful death of decedents. Claims by the United States and by United Air Lines for indemnity have been filed in the Blackwelder and Klehfoth cases.[2] Thus, each case is in fact three lawsuits: one by the individual heirs against United Air Lines for wrongful death; the second, a suit by the United States against United Air Lines for subrogation, or if no judgment is recovered by an individual plaintiff, or if less than the United States is liable to pay, then for indemnity or contribution; and the third, a claim by United Air Lines against the United States for indemnity to any sums it may be required to pay to individual plaintiffs.[3]

The parties consented that the motions be heard in Los Angeles under the terms and provisions of F.R.C.P. 77(b). The motions were heard and argued on October 15, 1962, briefs were filed, the matters continued to November 2, 1962, at which time the undersigned expected to announce his decision. However, being unable to complete the research required, the matters were again continued to November 20, 1962, at which time the jury and alternates were directed to return.

In every motion for change of venue under 28 U.S.C. § 1404(a), two questions are present: first, whether or not the case could have been "brought" in the transferee district, i. e., whether or not there is a statutory bar to the transfer because of inability to subject a party to process under F.R.C.P. 4(f) (Hoffman v. Blaski (1960), 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254; Shapiro v. Bonanza Hotel Co. (9th Cir., 1950), 185 F.2d 777); and secondly, whether or not, in the exercise of sound judicial discretion, the transfer *should* be made "for the convenience of the parties and witnesses, in the interest of justice."

1. In the Blackwelder and Klehfoth cases, both the United States and United Air Lines are defendants. The Court is advised that settlement between plaintiffs and the United States in these cases is pending. If this occurs, then all cases of the individual plaintiffs would remain pending against United Air Lines only.

2. No claims or cross-claims have been filed in the Paris case by either the United States or the United Air Lines. But counsel have indicated an intention to move to amend their pleadings to comprehend such claims.

3. Serious questions of law are, or may be, present as to the right of either United Air Lines or the United States to the relief each seeks. Nothing in this memorandum is to be taken as expressing an opinion on such questions.

The suits by the individual plaintiffs and the claims and cross-claims by the United Air Lines and the United States against each other could have been "brought" in the Southern District of California, and all parties would have been amenable to process therein under F.R.C.P. 4(f). (28 U.S.C. §§ 1331, 1332 1345, 1346(b) and (c), and 1391(a) and (b)).

United Air Lines contends that the plaintiffs, once having chosen their forum, are precluded from moving for a change of venue. There is nothing in the statute which so limits the right of the plaintiffs to move for a change of venue. As stated in Leopard Roofing Co. v. Asphalt Roofing Industry Bureau (Tenn.1960), 190 F.Supp. 726, 729, aff'd Philip Carey Mfg. Co. v. Taylor, 6 Cir., 286 F.2d 782, cert. den. 366 U.S. 948, 81 S.Ct. 1903, 6 L.Ed.2d 1242: "The wording of the statute itself is not limited to the defendant and if plaintiff chose a wrong forum in the first instance, he should not be deprived of the right to correct his mistake at a later date." See also: Thompson Products, Inc. v. Pennsylvania Railroad Company (S.D. N.Y.1955), 127 F.Supp. 449. The following cases cited and relied on by United Air Lines are not in point: In Barnhart v. John B. Rogers Producing Co. (N.D. Ohio, 1949), 86 F.Supp. 595, defendant was not amenable to process in the transferee forum therefore a statutory bar existed. In Anschell v. Sackheim, (N.J. 1956), 145 F.Supp. 447, the Court refused to split the plaintiff's cause of action and transfer only a part of the suit. In Griffin v. Connally (S.D. Texas), 127 F. Supp. 203, the action was dismissed on the ground that the complaint did not state a claim for relief.

It is noted that the Paris case against United Air Lines only was transferred from the Northern District of Illinois to the District of Nevada on motion of the *plaintiff*. Whether the United Air Lines objected thereto does not appear from the record.

There is no statutory bar to the transfer of the instant cases to the Southern District of California.

That being so, the question arises as to whether or not this Court *should*, in the exercise of sound judicial discretion, transfer the cases to the Southern District of California.

The discretion to be exercised is broader under 28 U.S.C. § 1404(a) than was permitted under the prior doctrine of forum non conveniens. Norwood v. Kirkpatrick (1955), 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789; Ex parte Pfizer & Co. (5th Cir., 1959), 225 F.2d 720.

The standards to be considered in exercising discretion, as set forth in the statute, are convenience of the parties, convenience of the witnesses, and the all-inclusive phrase "in the interest of justice." The cases cited by counsel and the many cases referred to in various citators have been examined but have been found to be of little precedential value because, obviously, "convenience," whether of a party or witness, and "the interest of justice," are matters that are peculiar to the circumstances of each particular case. As the Supreme Court said in Gulf Oil Corp. v. Gilbert (1947), 330 U.S. 501 at 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, in speaking of the considerations to be weighed in motions for change of venue: "Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts * * *."

The prevailing consideration in the exercise of discretion in *these cases* is whether or not "in the interest of justice," the elimination of any further delays could be made in the adjudication of plaintiffs' rights. And that, in turn, depends upon whether or not the instant cases could be consolidated with the Southern California cases and tried as to liability of the United Air Lines, to the same jury which last May 26th returned a verdict holding United Air Lines liable in the Southern California cases.

While I am mindful of the fact that it has been more than four and one-half years since the accident happened, and while I am mindful that there is author-

716

ity for the transfer and consolidation of cases to a transferee district where a previous case involving the same subject matter has already been tried [Continental Grain Co. v. Federal Barge Lines, Inc. (1960), 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540; Walker v. Loop Fish & Oyster Co. (5th Cir., 1954), 211 F.2d 777]; I am not convinced that sound judicial discretion permits the transfer and the consolidation of the instant cases[4] with those tried and now ready for the signing and entry of final judgments in the Southern District of California.

After careful review of the authorities, and much deliberation, I am convinced that more problems and more delays would be caused and created than would be solved by the consolidation of the instant cases with the Southern California cases.

In reaching this conclusion I am not unmindful of the fact that four of the widows and their ten minor children reside in the Southern District of California and in the vicinity of Los Angeles. One other widow with one child resides in Texas, and another one with five children resides in Washington. While, by making the motion, they have waived whatever inconvenience they would be caused in coming to Los Angeles, it appears that it would be no more inconvenient for them to go to Nevada than to Los Angeles for trial. None of the widows or children would be witnesses on the matter of liability, but only on the matter of damages, and none of the trials on the issue of damages should exceed a few days, if they follow the pattern of the Southern California cases which have been tried.

Nor am I unmindful of the fact that the trial on the issue of liability took fifteen weeks to try in the consolidated Southern California cases. But whether or not it will again be necessary to try

that issue in the instant cases will depend upon whether or not the plaintiffs may invoke the principles of estoppel by judgment under the doctrine of *res judicata*. Although I have done considerable research on that subject, I do not at this time express an opinion thereon. If it is applicable, the trials would be shortened to the issue of damages only.

The Motion to consolidate the individual plaintiffs' cases against United Air Lines will be granted. Appropriate orders will follow.

■■ As hereinbefore indicated, the claim of the United States against United Air Lines is for subrogation or for indemnity or contribution for such sums as it is or may become liable to pay to the individual plaintiffs, and the cross-claims of United Air Lines are for indemnity. The questions of law involved are different than those involved in the claims of the individual plaintiffs against United Air Lines. To mention but one of such matters, the degree of care owed by United Air Lines to the individual plaintiffs is the utmost care, whereas the degree of care owed by it to the United States, and by the United States to United Air Lines is only that of ordinary care; and the degree of care owed by the United States, where it is a defendant, to the plaintiffs is also that of ordinary care. Thus, to consolidate the claims of the United States and the United Air Lines against each other with the cases of the individual plaintiffs against United Air Lines would be exceedingly confusing, and in the opinion of the undersigned, would result in prejudice to the claims of the individual plaintiffs.

Accordingly, under Rules 42(b) and 21, Federal Rules of Civil Procedure, such claims of the United States and United Air Lines against each other will be severed, and will be separately set for trial.

4. Counsel in the Paris and Blackwelder cases conditioned (orally) the motion to transfer, on the granting of the motion to consolidate the instant cases with the already tried cases in the Southern

District of California. Thus, they did not waive their right to venue in Nevada, which can be done. Hoffman v. Blaski (1960) 363 U.S. 335 at 343, 80 S.Ct. 1084, 4 L.Ed.2d 1254.

In view of the foregoing, and good cause appearing therefor,

IT IS HEREBY ORDERED:

(1) That the Pebles case, No. 1817, pending in the Eastern District of Washington, be and it is transferred under the terms and provisions of 28 U.S.C. § 1404(a) to the District of Nevada;

(2) That it and the Matlock, Nollenberger, Thompson, Theobald, Blackwelder, Klehfoth and Paris cases be consolidated with each other in the District of Nevada for joint trial on the question of liability, and that each case be tried separately to one jury on the issue of damages;

(3) That the claims of the United States against United Air Lines and the cross-claims of United Air Lines against the United States be severed from the claims of the individual plaintiffs against United Air Lines and separately tried;

(4) That in the event the Blackwelder and Klehfoth cases go to trial against the United States, they will be tried to the Court on the question of damages on the same evidence on that subject matter as may be adduced against United Air Lines;

(5) That the Motions of the United States and of the individual plaintiffs in all other respects be, and they are hereby denied.

Upon ascertaining what date courtroom facilities will be available in Las Vegas, the undersigned will set the instant cases for trial, after consultation with counsel. The calendar of the undersigned is such that he can proceed promptly to the trial of the instant cases, and will expect the same excellent cooperation from counsel in that respect which has so willingly been given in the Southern California cases.

MEMORANDUM FOLLOWING ORDER FOR SUMMARY JUDGMENT

Since filing the Memorandum and Order of November 14, 1962, two additional cases (Klehfoth [1] and Darmody) were transferred from the District of Nebraska, first to the Southern District of California, and then to the District of Nevada. And, in all of the cases tried in the Southern District of California, Judgment for the plaintiffs on the verdicts against United Air Lines, Findings of Fact, Conclusions of Law and Judgments for the plaintiffs against the United States of America where it was a defendant, and Findings of Fact, Conclusions of Law and Judgment on the Cross-claims of United States of America and United Air Lines in the cases where they were filed against each other, were, in the latter part of November, signed, filed, and entered. Motions for new trial made by United Air Lines in each case have been heard and denied, and a Notice of Appeal filed by United Air Lines in each case.

The plaintiffs filed Motions for summary judgment in the above-captioned cases against United Air Lines on the question of liability only, which Motions were argued and decided in plaintiffs' favor on December 5, 1962. At that time I stated a Memorandum on the subject would follow. On December 7, 1962, Findings of Fact, Conclusions of Law and Judgment on said Motions were signed and filed, but entry thereof was directed to be withheld until final judgments on damages are entered.

The grounds of the Motions for summary judgment are that defendant United Air Lines, under the verdicts and judgments holding United Air Lines liable as a defendant to the plaintiffs in the cases tried in the Southern District of California, is collaterally estopped to deny liability to the plaintiffs herein under the doctrine of *res judicata*. The second ground is that the plaintiffs, being survivors of passengers for hire, are entitled to judgment as a matter of law under the doctrine of *res ipsa loquitur*.

---

1. The Court is advised that the two Klehfoth cases and the Blackwelder case have been settled and are only awaiting formalities. The decedents in all the remaining cases were employees of the United States of America, and all of the remaining cases are pending against United Air Lines only.

Three questions on the matter of *res judicata* are presented by the Motions: (1) whether or not the summary judgment procedure prescribed by Rule 56, Federal Rules of Civil Procedure, can be utilized to invoke collateral estoppel by judgment under the doctrine of *res judicata*; (2) whether or not the Judgments in the cases tried in the Southern District of California, in all of which the United Air Lines was a defendant, are final for *res judicata* purposes; and (3) whether or not the plaintiffs in the instant cases, being different but the defendant the same as in the Southern California cases, there is sufficient privity between the parties, or mutuality as it is sometimes called, to permit the application of the rule of collateral estoppel under the doctrine of *res judicata*.

## SUMMARY JUDGMENT PROCEDURE

■ That the summary judgment procedure provided by Rule 56, F.R.C.P., can be utilized to invoke collateral estoppel under the doctrine of *res judicata* is settled by its use in the following cases: Lester v. National Broadcasting Co. (9 Cir., 1954), 217 F.2d 399, cert. den. 348 U.S. 954, 75 S.Ct. 444, 99 L.Ed. 746; Ratner v. Paramount Pictures (D.C.S.D. N.Y.1942), 6 F.R.D. 618; Gorski v. Commercial Ins. Co. (E.D.Wis.1962), 206 F. Supp. 11; Louisville Trust Co. v. Smith (W.D.Ky.1961), 192 F.Supp. 396. See also: Leimer v. Woods (8 Cir., 1952), 196 F.2d 828, where the Appellate Court suggested summary judgment procedure on remand.

■ Rule 8(c), Federal Rules of Civil Procedure, under the heading "Affirmative Defenses," provides that in pleading to a "preceding pleading" a party shall affirmatively set forth, among other things, "estoppel" and "res judicata." It is to be noted that these matters are to be set forth when they constitute an "avoidance or affirmative *defense.*"

Here plaintiffs, not defendants, are invoking the doctrine. Thus it is not a matter of defense. The purpose of requiring such averment in a pleading is to give notice to the opposite side so that it may have an opportunity to rebut the same.

The same result is achieved by motions for summary judgment under Rule 56, F.R.C.P. [1-a] They are speaking motions supported by affidavits and by bringing into the record, in the instant cases, the verdict and judgment on the question of liability in the consolidated cases tried in Southern California, and of the files, record, exhibits, transcripts, pleadings, evidence, and documents in those cases relating to the question of liability.

It is undisputed that the verdicts in the Southern California cases were returned and the judgments thereon made and entered, and that Findings of Fact, Conclusions of Law and Judgments on the Cross-claims were made and entered. While plaintiffs could raise the issue by filing supplemental complaints alleging the same things as are set forth in their motions, it would be an empty and useless tribute to technicality to require them to do so, or penalize them for not doing so, and it would be contrary to the imprimitur of the Federal Rules of Civil Procedure, Rule 1, that such rules "shall be construed to secure the just, speedy, and inexpensive determination of every action."

I conclude that the summary judgment procedures authorized under Rule 56, F.R.C.P., are appropriate and proper to raise the issue as to whether or not collateral estoppel on the question of liability under the doctrine of *res judicata* can be raised in these cases.

## FINALITY

■ Defendant United Air Lines takes the position that, under the rule laid down in Erie R. Co. v. Tompkins (1938) 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the finality of the judgments rendered in the cases in the Southern District of California, being based juris-

---

[1-a]. F.R.C.P. 56(c)—"A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

dictionally on diversity of citizenship, is to be determined by the law of the State of California.

There is no doubt that, under the statutory [2] and decisional law of the State of California, actions commenced, tried and pursued to judgment in the California State courts, are deemed to be pending from the time of their commencement until final determination on appeal or until time for appeal is passed, unless judgment is sooner satisfied. And, there is no doubt that the case law of California holds that by reason of this section, a judgment cannot have a *res judicata* effect during the statutory period of pendency under that Code section.[3]

No quarrel can be had with the logic of the California cases in this respect in view of the provisions of the California Code of Civil Procedure, Section 956a,[4] which gives the Appellate Courts the power in non-jury cases to make findings of fact contrary to or in addition to those made by the trial court, and power to adduce additional evidence of or concerning facts occurring at any time prior to the decision of the appeal. In contrast,

the powers of the Appellate Courts in the Federal system are limited to the record made in the trial court. Brooks v. Woods (9 Cir., 1950), 181 F.2d 716; MacKay v. American Potash & Chemical Co. (9 Cir., 1959), 270 F.2d 646.

Erie R. Co. v. Tompkins, supra, as a reading of it shows, and as case after case has pointed out, held that there is no Federal Common Law, but that in diversity cases, United States District Courts, under the Rules of Decision Act (now 28 U.S.C. § 1652) were bound to apply the *substantive* common law of a State as found in the statutes and as interpreted or developed by the decisions of the courts of that State. It did not deal with procedure or concern procedural matters. Gifford v. Wichita Falls & Southern Railway Co. (5 Cir., 1955), 224 F.2d 374–376, cert. den. 350 U.S. 895, 76 S.Ct. 153, 100 L.Ed. 787; Marlowe v. Baird (6 Cir., 1962), 301 F.2d 169–170.

Erie R. Co. v. Tompkins, supra, discussed the Rules of Decision Act, and made no mention of the Conformity Act (Rev.St. § 914, then 28 U.S.C. § 724 [5]), which was then under the shadow of the

2. *Section 1049, California Code of Civil Procedure—Actions, when deemed pending.* An action is deemed to be pending from time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."

3. In Jennings v. Ward, 114 Cal.App. 536, 300 P. 129, the Court, in commenting upon the California rule, stated that "the weight of authority in other jurisdictions is to the contrary."

4. "In all cases * * * where trial by jury has been waived, the Supreme Court or a district court of appeal may make findings of fact contrary to, or in addition to, those made by the trial court. Such findings may be based on the evidence adduced before the trial court either with or without the taking of evidence by the court of appellate jurisdiction, pursuant to such rules as the Judicial Council may prescribe.

"The said courts of appellate jurisdiction may, for the purpose of making such findings or for any other purpose in the interest of justice, take, pursuant to such

rules, additional evidence of or concerning facts occurring at any time prior to the decision of the appeal and may give or direct the entry of any judgment or order and make such further or other order as the case may require. This section shall be liberally construed to the end, among others, that wherever possible causes may be finally disposed of by a single appeal and without further proceedings in the trial court, except where the interest of justice requires a new trial. (Added Stats.1927, c. 352, p. 583, § 1. As amended Stats.1945, c. 40, p. 356, § 4.)"

5. 28 U.S.C. § 724 (1928)—*Conformity to practice in State courts.* The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such district courts are held, any rule of court to the contrary notwithstanding. (R.S. § 914.)"

Act of June 19, 1934 (48 Stats. 1064, now 28 U.S.C. § 2072) authorizing the Supreme Court to prescribe uniform rules of procedure for the District Courts of the United States. The latter Act contained a provision that "all laws in conflict" with such uniform rules, when they were prescribed, "shall be of no further force or effect."

The Federal Rules of Civil Procedure were adopted in 1938 shortly after Erie R. Co. v. Tompkins, supra, was announced, and it cannot be supposed that the Supreme Court at that time was unaware of the Act of June 19, 1934, or of the appointment of the Committee to formulate and recommend uniform rules, or of the activities of that committee and of the various Bar Associations in connection with the rules. That the Federal Rules of Civil Procedure were intended to take the place of the Conformity Act is shown not only by the text of the Act of June 19, 1934 (supra), but also in the discussions leading up to their adoption.[6] The Supreme Court in Sibbach v. Wilson & Co. (1941), 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479, held to that effect.[7] And lest there be any doubt that procedural matters in Federal Courts, lower and appellate, are to be governed by the Federal Rules of Civil Procedure, and Federal Statutes, Congress, in adopting the new Judicial Code (Title 28) in 1948 [62 Stats. 992], specifically repealed the Conformity Act which was then 28 U.S.C. § 724.

Erie R. Co. v. Tompkins, supra, 304 U.S. at page 78, 58 S.Ct. 817, excepted from the operation of State law all those matters governed by Acts of Congress. [Baird v. Koerner (9 Cir., 1960), 279 F.2d 623, at 627. And Congress by Statute and by the Federal Rules of Civil Procedure has adopted laws regulating appellate procedures and the powers of Federal courts on appeal which differ from the California law.

The Federal Rules of Civil Procedure and the Federal Statutes adopt many details of procedure of the law of the State where the District court is held, e. g., F.R.Civ.P. 64 concerning attachment. This portion of this Memorandum is limited only to procedures and powers on and after an appeal is taken from a United States District Court in connection with determining the finality of a judgment of the United States District Court for the Southern District of California for *res judicata* purposes.

 Extensive provisions are made in the Federal Rules of Civil Procedure concerning stay of execution (F.R.C.P. 62) and appeals (F.R.C.P. 73, 74 and 75). And, in the exceptions of the cases to which the Federal Rules of Civil Procedure do not apply [F.R.C.P. 81(a) (2)], diversity cases are not included. The powers of the Courts of appeal and of the Supreme Court of the United States are set forth in the Judicial Code, as well as certain statutory provisions concerning procedures on appeal. [28 U.S.C. §§ 1251–1256, 1291–1294, and 2101–2111]. All of these indicate that the force and effect of a decision and judgment of a United States District Court as to finality and the powers of Appellate Courts were intended to be governed by the Federal Rules of Civil Procedure and the Statutes of the United States, which are not to be thwarted by the application of State procedures, whether statutory or decisional.

If the contentions of United Air Lines were followed, instead of providing for uniformity, it would promote confusion, contradiction, and the greatest possible lack of uniformity. This is best illustrated in the actions arising out of the airplane crash involved in these cases where suits were filed in United States District Court situated in 13 different States by survivors of the 49 people killed in that crash. It is inconceivable that

6. See American Bar Association Publications of 1938 and 1939 reporting the A.B.A. Institutes on the Federal Rules of Civil Procedure in Cleveland, Washington, D. C., and New York.

7. For other cases to the same effect, see Moore, Volume 2, page 8.

the Erie R. Co. v. Tompkins, supra, doctrine should regulate the procedure so that the State law of 13 different States, or of one State, would control the procedures and powers of Federal Appellate Courts so as to affect the finality of the judgments which have been and will be made in Federal Courts in the cases arising out of that single catastrophe.

It must be kept in mind that we are not dealing here with a judgment rendered by a California State Court, which was the situation in Sharon v. Hill (C.C. Calif.1885), 26 F. 337 (relied upon by defendant United Air Lines here), and in Contra Costa Water Co. v. City of Oakland (C.C.Calif.1904), 165 F. 518, which present a different question than when considering a judgment of a Federal Court sitting in a particular State. The latter was the case in Hughes v. Dundee Mortgage & Trust Investment Co. (C.C.1886), 28 F. 40. Both of these cases will be commented on shortly.

Formerly in the Federal system, appeals were taken in cases at law by a writ of error (R.S. § 691) [8] and "in cases of equity, and of admiralty and maritime jurisdiction" by appeal. [R.S. § 692]. An appeal in an equity, admiralty or maritime case formerly removed the case to the higher court for trial *de novo*, whereas a writ of error in cases at law permitted only affirmance, reversal, modification or new trial. Sharon v. Hill, supra, 26 F. at page 345.

"A writ of error in cases at law * * * does not vacate the judgment below. That continues in force until reversed which is only done when errors are found in the record on which it rests and which were committed previous to its rendition." Railway Co. v. Twombly (1879) 100 U.S. 78, at 81, 25 L.Ed. 550.

Not only has the distinction between forms of action been abolished by Rule 2, Federal Rules of Civil Procedure, but the distinction between writs of error and appeal have been abolished so that all reviews of decisions of the lower Federal courts by the Federal Appellate courts have been called appeals since 1928. [45 Stats. 54, formerly 28 U.S.C. § 861(a)].[9]

■ The powers of the Appellate Courts on review of decisions of District Courts are now governed by 28 U.S.C. §§ 2106 and 2111 [10] so that in all appeals, whether at law [United States v. Rice (1946), 327 U.S. 742 at 747, 66 S.Ct. 835, 90 L.Ed. 982], or in equity [United States v. City of Brookhaven (5 Cir., 1943), 134 F.2d 442], or in admiralty [McAllister v. United States (1954), 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20], are now governed by the same rules which formerly governed the powers of Appellate Courts on writs of review, i. e., they affirm, reverse, modify, or send back for re-trial, and they do not try the cases *de novo*.

8. R.S. § 691 was repealed by Section 14 of the Act of March 3, 1891, 26 Stats. 826, which created Circuit Courts of Appeal, but the substance of R.S. § 691 was re-enacted by Sections 5 and 6 of the Act of March 3, 1891.

9. To eliminate the term "writ of error" as applicable to reviews of State court decisions, the Act adopting the present Judicial Code by Section 23 [28 *U.S.C.* following Sec. 2718, 62 Stats. 990] provides that "[a]ll Acts of Congress referring to writs of error shall be construed as amended to the extent necessary to substitute appeal for writ of error."

10. 28 U.S.C. § 2106 —"*Determination.* The Supreme Court or any other court

of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances. June 25, 1948, c. 646, 62 Stat. 963."

28 U.S.C. § 2111—"*Harmless error.* On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties. Added May 24, 1949, c. 139, § 110, 63 Stat. 105."

Thus, the cases involving judgments concerning actions at law, decided while the Conformity Act was in force, as well as R.S. § 988, formerly 28 U.S.C. § 841, now recast as Rule 62(f), Federal Rules of Civil Procedure, are still authority for the proposition declared in Railway Co. v. Twombly, supra, as above set forth.

As long ago as 1886, in Hughes v. Dundee Mortgage & Trust Investment Co., 28 F. 40, Judge Deady, sitting as a United States Circuit Court for the District of Oregon, which had a State statute[11] similar to that of California, held that a prior judgment of that court, i. e., the then U. S. Circuit Court, now U. S. District Court, then on review by writ of error to the Supreme Court, was final for the purposes of *res judicata* in the Federal Court by virtue of the fact that the United States had, by statute, provided for its own procedures and powers of its Appellate Courts in cases on review from a lower court. As for Sharon v. Hill (1885), 26 F. 337, relied on by defendant here,[12] Judge Deady who wrote the opinion in both cases, said in Hughes v. Dundee, Mortgage & Trust Investment Co., supra, 28 F. at page 42:

"The first reply to the fifth defense is a confession and avoidance of the same, the matter of avoidance being that, within 10 days from the entry of the judgment in said former action, and before the commencement of this one, the defendant 'removed said cause,' by a writ of error, to the supreme court of the United States, alleging that the judgment therein was erroneous and contrary to law, and ought to be reversed; and that said defendant gave the proper bond, and caused said writ of error to become a supersedeas, and the same is still pending in said supreme court; wherefore said judgment is not a final one, nor a bar to the maintenance of this action.

"In his argument in support of this reply the plaintiff has gone over much ground, and collated many authorities touching the subject. Briefly, the argument is: (1) A judgment of the circuit court, to which a writ of error lies from the supreme court, is not, in the nature of things, a final judgment, that can have the effect of a bar or an estoppel, the proceeding in the supreme court on the writ of error being merely a continuance of that in the circuit court; and, (2) irrespective of the effect of the writ of error in the premises, under section 505 of the Code of Civil Procedure, which provides that an action is deemed to be pending until its final determination on appeal, or the time for an appeal has expired, a judgment of the circuit court cannot be pleaded as a bar or an estoppel during the pendency of a writ of error thereon, or until the time for taking such writ expires. This question has been heretofore considered by me in Sharon v. Hill, 26 Fed.Rep. 337, and Oregonian Ry. Co. v. Oregon R. & N. Co., [C.C.,] 27 Fed. [277,] 284, and a *contrary conclusion reached.*" (Emphasis supplied).

■ The prevailing rule in the Federal courts concerning the finality of a judgment on appeal in connection with the application of the *res judicata* doctrine is perhaps best succinctly stated in

---

11. Oregon C.C.P. 505.

12. The only other Federal case relied on by defendant on this point of finality is Caterpillar Tractor Co. v. International Harvester Co. (3 Cir., 1941), 120 F.2d 82, 139 A.L.R. 1. The statements therein are not only at variance with the weight of authority, but are pure dicta as the opinion stated (p. 85) that it was "[a]n interesting intellectual question * * * concerning the theoretical basis for the effect to be given the judgment of a federal court in Nevada in a federal court in New Jersey." The court further stated that the subject was a matter (p. 86) "which has not, so far as we have been able to find, been dealt with by Nevada courts." The matter had been settled by the Nevada courts in the decisions hereinafter alluded to in this Memorandum.

Refior v. Lansing Drop Forge Co. (6 Cir., 1943), 134 F.2d 894, where, at page 896, the Court stated: "It is a well settled rule of the Federal Courts, that a judgment or decree will operate as res judicata or as estoppel, notwithstanding an appeal, unless the proceeding on review is a trial de novo. Kansas Pacific Railway Company v. Twombly, 100 U.S. 78, 25 L.Ed. 550; Straus v. American Publishers' Association, 2 Cir., 201 F. 306; Roberts v. Anderson, 10 Cir., 66 F.2d 874; E. I. DuPont de Nemours & Co. v. Richmond Guano Co., 4 Cir., 297 F. 580."

Kansas Pacific Railway Company v. Twombly (1879) 100 U.S. 78, 25 L.Ed. 550, has already been alluded to.

In Straus v. American Publishers' Association (2 Cir., 1912), 201 F. 306, appeal dismissed 235 U.S. 716, 35 S.Ct. 197, 59 L.Ed. 438, the lower Federal Court applied the doctrine of res judicata as to a State court judgment of New York which, at the time the action was pending in the lower Federal court, was still on appeal in the Supreme Court of the United States. The Court said, 201 F. at page 310: "The point is also made that the judgment was not res judicata because of the appeal pending to the United States Supreme Court. This fact does not suspend the operation of the judgment as an estoppel."

In E. I. DuPont de Nemours & Co. v. Richmond Guano Co. (4 Cir., 1924), 297 F. 580, on the question of finality of a judgment of the United States District Court of North Carolina, then pending on appeal to the United States Court of Appeals for the Fourth Circuit, the Court stated, at page 583, as follows: "An unusual situation has arisen in this case. When it was tried on April 9, 1923, in the Eastern District of Virginia, an appeal on writ of error was pending in this court from the North Carolina judgment. It was suggested, but not seriously contended, that the plea of res adjudicata should have been overruled because of the possibility that the North Carolina judgment might be reversed by this court. But the rule in the federal courts, as well as in many other jurisdictions, is that when a case is removed to an appellate court by writ of error, on appeal, if it is not there tried de novo, but the record made below is simply re-examined and the judgment [below] either reversed or affirmed, such an appeal does not vacate the judgment below or prevent it from being pleaded and given in evidence as an estoppel upon the issues which were tried and determined. Ransom v. City of Pierre [8 Cir.], 101 Fed. 665, 41 C.C. A. 585; Railway Co. v. Twombly, 100 U.S. 78, 25 L.Ed. 550; Brown v. Schintz, 203 Ill. 136, 67 N.E. 767; State [ex rel. Spratt] v. Spratt, 150 Minn. 5, 184 N.W. 31; Paterno Construction Co. v. Rentner, (Mun.Ct.) 191 N.Y.Supp. 517; Thompson v. Graham, 246 Pa. 202, 92 Atl. 118; Munn v. Gordon, 87 Kan. 519, 125 Pac. 7; Straus v. American Pub. Assn. [2 Cir.,] 201 Fed. 306, 119 C.C.A. 544; Walz v. Agricultural Ins. Co. (D.C.) 282 Fed. 646; Deposit Bank [of Frankfort] v. Frankfort,[13] 191 U.S. 499, 24 Supp.Ct. 154, 48 L.Ed. 276; 2 Black on Judgments, § 510; 23 Cyc., 1233, 1234; 3 Corpus Juris, 1252, 1316, 1317."

In Roberts v. Anderson (1933) 66 F. 2d 874, the United States Court of Appeals for the Tenth Circuit had on appeal a judgment from the United States District Court for the Northern District of Oklahoma wherein it was called upon to determine whether or not a judgment of the State court of Oklahoma was properly relied on as final by the lower court, and held that an appeal did not affect the finality of the State court judgment for res judicata purposes. But the Tenth Circuit in 1934 held otherwise in Coppedge v. Clinton (1934) 72 F.2d 531. The Court in Cohen v. Superior Oil Corp. (D.C.) 16 F.Supp. 221, aff'd 3 Cir., 90 F. 2d 810, cert. den. 302 U.S. 726, 58 S.Ct. 47, 82 L.Ed. 561 said that the Court

---

13. Deposit Bank of Frankfort v. Frankfort reached the same conclusion even though it was an equity case and even though the State court judgment upon which the lower Federal court based its judgment was reversed before the matter reached the Supreme Court.

in Coppedge v. Clinton, supra, "was laboring under a misapprehension." In Cohen v. Superior Oil Corp., 90 F.2d 810 at 811, the Court of Appeals quoted with approval from Emery v. United States (D.C.W.D.Pa.) 27 F.2d 992, 994, as follows:

> " 'The appeal from a judgment does not suspend its effect. The appeal when perfected, may stay execution upon the judgment from which it is taken; but until reversed, it stands binding upon the parties on every question directly decided.' "

and from Deposit Bank of Frankfort v. Frankfort, 191 U.S. 499, 520, 24 S.Ct. 154, 162, 48 L.Ed. 287, as follows:

> " 'When the state court refused to give that judgment effect it denied a right secured by the Federal court judgment upon matters wherein its decision was final until reversed in an appellate court, or modified or set aside in the court of its rendition.' "

The above quotations make clear the distinction between finality for *res judicata* purposes and a stay.

Deposit Bank of Frankfort v. Frankfort, supra, is the case usually cited for the proposition that an appeal does not affect the finality of a judgment for res judicata purposes. [See: 9 A.L.R. 2d 1000 and cases there cited]. In that case the Federal court predicated its decree upon a State court judgment which was later reversed, and upon remand to the State court, the Federal decree, then on appeal, was set up as an estoppel under the principles of res judicata. The Court sustained the proposition of estoppel by judgment, saying, at page 511, 24 S.Ct. at page 158:

> "We are unable to find reason or authority supporting the proposition that because a judgment may have been given for wrong reasons or has been subsequently reversed, that it is any the less effective as an estoppel between the parties while in force. In Crescent City Live Stock [Landing & Slaughter-House] Co. v.

Butchers' Union Slaughter House Co., 120 U.S. 141 [7 S.Ct. 472, 30 L.Ed. 614], the question of what effect should be given to a decision of a court of the United States as proof of probable cause in a suit for a prosecution which was alleged to be malicious was before the court. It appeared that the judgment relied upon had been subsequently reversed, and it was held that this made no difference unless it was shown that the judgment was obtained by means of fraud. Mr. Justice Matthews, delivering the opinion of the court, said:

> " 'Its integrity, its validity, and its effect are complete in all respects between all parties in every suit and in every forum where it is legitimately produced as the foundation of an action, or of a defense, either by plea or in proof, as it would be in any other circumstances. While it remains in force it determines the rights of the parties between themselves, and may be carried into execution in due course of law to its full extent, furnishing a complete protection to all who act in compliance with its mandate, and even after reversal it still remains, as in the case of every other judgment or decree in like circumstances, sufficient evidence in favor of the plaintiff who instituted the suit or action in which it is rendered, when sued for a malicious prosecution, that he had probable cause for his proceeding.' "

Reed v. Allen (1932) 286 U.S. 191, 52 S.Ct. 532, 76 L.Ed. 1054, was a case arising in the District of Columbia. In that case the Supreme Court of the District of Columbia had entered a judgment concerning the ownership of money which depended upon the construction of a will. The court construed the will and entered judgment. Thereafter an appeal was taken from that judgment, but another case was filed in ejectment for a certain property, the right of possession to which depended upon the same will

construed in the previous suit. The District of Columbia Court, relying on the previous judgment, gave its decision accordingly, and no appeal was taken from that judgment. Thereafter the earlier judgment was reversed, and the District Court in the second case vacated its decree which was reversed by the Supreme Court on appeal in Reed v. Allen, supra, on the ground that the first judgment was *res judicata* even though on appeal, and after citing several cases, stated, at page 201, 52 S.Ct. at page 534:

> "These decisions constitute applications of the general and well settled rule that a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel upon the points decided, whether the decision be right or wrong. Cornett v. Williams, 20 Wall. 226, 249–250 [22 L.Ed. 254]; Wilson's Executor v. Deen, 121 U.S. 525, 534 [7 S.Ct. 1004, 30 L.Ed. 980]; Chicago, R. I. & P. Ry. v. Schendel, 270 U.S. 611, 617 [46 S.Ct. 420, 70 L.Ed. 757]. The indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of res judicata to avert."

Should the matter of the *res judicata* effect of the judgments involved be considered substantive rather than procedural, it is to be recalled that throughout the trial of the cases in the United States District Court at Los Angeles, all parties agreed that the substantive law of California, on the subject of conflict of laws, required that the substantive law of Nevada must be applied to the cases, so that they were tried by the United States District Court in Los Angeles as if it were sitting as a Nevada State court across the State line in Nevada, not as if it were sitting across the street in Los Angeles as a California State court applying California substantive law. And the courts of Nevada have consistently held that a judgment while on appeal is final for *res judicata* purposes. Rogers v. Hatch (1872), 8 Nev. 39; Cain v. Williams, (1882), 16 Nev. 426, 430. See also: Young v. Brehi (1887), 19 Nev. 379, 12 P. 564; and Brooks v. Nevada Nickel Syndicate (1893), 24 Nev. 311, 53 Pac. 597.

Furthermore, Nevada in 1953 adopted the Federal Rules of Civil Procedure as Nevada law (N.R.S. 2.120) so that even if the doctrine of Erie R. Co. v. Tompkins, supra, were applicable, the California Conflict of Laws rule, which requires the application of Nevada law, would mean that the Federal Rules of Civil Procedure as adopted by Nevada control over the rule of non-finality which California applies to its State court judgments.

I conclude that the verdicts and the judgments thereon, and the judgments on the cross-claims in the cases tried in the Southern District of California, even though an appeal is pending and even though a supersedeas bond may be filed, are final for the purpose of permitting the application of estoppel by judgment under the doctrine of *res judicata* to the within cases.

## MUTUALITY

In the instant cases, plaintiffs were not parties to the trial on the question of liability in the 24 consolidated cases in which that question was tried at Los Angeles. All of the decedents in the instant cases were passengers for hire on the same United Air Lines plane and were killed in the same crash which killed the decedents involved in the 24 cases tried in the Southern District of California. So, the question arises as to whether or not estoppel by judgment can be invoked by the plaintiffs against the same defendant in *these cases* where there is not privity of both parties, or mutuality of estoppel as it is sometimes stated.

While it is true that the general rule requires that there be identity of parties to invoke the doctrine of *res judicata*, nevertheless, the Courts, increasingly so in the last 20 years, have

not adhered to that doctrine, and have held that no constitutional right is violated where *the thing to be litigated was actually litigated in a previous suit, final judgment entered, and the party against whom the doctrine is to be invoked had full opportunity to litigate the matter and did actually litigate it.*

The rule of non-mutuality is not a general one but a limited one to be determined from the facts and circumstances in each case whether or not it should be applied.

Inasmuch as this question involves constitutional rights concerned with due process and the right to a jury trial, the resolution of it requires the application of principles of substantive law as distinguished from procedural. And, as hereinbefore noted, all counsel agreed, in the trial of the cases at Los Angeles, that the substantive law of Nevada controls if the subject is covered by Nevada statute or case law which is sufficiently conclusive and final.

There is no Nevada statute on the subject. But the case law of Nevada has been settled, contrary to defendant United Air Lines' contentions, for many years by Bernard v. Metropolis Land Co. (1916), 40 Nev. 89, 160 P. 811 at 814, and Edwards v. Jones (1926) 49 Nev. 342, 246 P. 688.

While there have been many cases decided in many jurisdictions on the point, none of them explored the matter as thoroughly or stated the principles involved with as much clarity as the California case of Bernhard v. Bank of America (1942) 19 Cal.2d 807, 122 P.2d 892, which has perhaps caused more comment [14] than any other, so much so, that it is sometimes called the "Bernhard Doctrine."

The essence of the doctrine is found in the following quotation from that case at pages 811, 812–813, at pages 894–895, 122 P.2d:

"The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. Coca Cola Co. v. Pepsi-Cola Co., supra [6 W.W.Harr. 124, 36 Del. 124, 172 Atl. 260]. See cases cited in 24 Am. & Eng.Encyc., 2d Ed., 731; 15 Cinn.L.Rev. 349, [350] 351; 82 Pa.L.Rev. 871–872. He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. Ibid. There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

"No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. See 7 Bentham's Works, Bowring's Ed., 171. Many courts have abandoned the requirement of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted. Coca Cola Co. v. Pepsi-Cola Co., supra; Liberty Mutual Insur. Co. v. George Colon & Co., 260 N.Y. 305, 183 N.E. 506; Atkinson v. White, 60 Me. 396; Eagle, etc., Insur. Co. v. Heller, 149 Va. 82, 140 S.E. 314, 57 A.L.R. 490; Jenkins v. Atlantic Coast Line R. Co., 89 S.C. 408, 71 S.E. 1010; United States v. Wexler, D.C. [2 Cir.], 8 F.2d 880. See Good Health Dairy [Food] Products Corp. [of Rochester] v. Emery, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401. The commentators are almost unanimously in accord. 35 Yale L.J. 607; 9 Va.L.Reg. (N.S.) 241; 29 Ill.L.Rev. 93; 18

14. See "Mutuality of Collateral Estoppel; Limits of the Bernhard Doctrine," 9 Stanford Law Review, page 281.

N.Y.U.L.Q.R. 565, 570; 12 Corn.L.Q. 92. The courts of most jurisdictions have in effect accomplished the same results by recognizing a broad exception to the requirements of mutuality and privity, namely, that they are not necessary where the liability of the defendant asserting the plea of res judicata is dependent upon or derived from the liability of one who was exonerated in an earlier suit brought by the same plaintiff upon the same facts. See cases cited in 35 Yale L.J. 607, 610; 9 Va.L.Reg. (N.S.) 241, 245–247; 29 Ill.L.Rev. 93, 94; 18 N.Y.U.L.Q.R. 565, 566, 567; 34 C.J. 988, 989. * * * The cases justify this exception on the ground that it would be unjust to permit one who has had his day in court to reopen identical issues by merely switching adversaries.

"In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" [15]

The Supreme Court of California, as late as October 25, 1962, reaffirmed the doctrine of the Bernhard case in Teitelbaum Furs, Inc. v. The Dominion Ins. Co., Ltd., 58 A.C. 615, 25 Cal.Rptr. 559 at 560, 375 P.2d 439, at page 440, where the Court said:

"The doctrine of res judicata has a double aspect: (1) it 'precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction.' (2) 'Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action.' [Bernhard v. Bank of America, 19 Cal.2d 807, 810, 122 P.2d 892, 894; See Taylor v. Hawkinson, 47 Cal.2d 893, 895–896, 306 P.2d 797.] In the present case, since plaintiffs' cause of action is different from that of the state in the criminal proceeding, we are concerned with the latter aspect, often termed collateral estoppel.

"In the Bernhard case, supra, this court rejected the doctrine of mutuality of estoppel that had been applied to limit the scope of collateral estoppel, and held three questions to be pertinent in determining the validity of the plea. 'Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?' [19 Cal.2d at p. 813, 122 P.2d at p. 895.] The record in the present case provides affirmative answers to each of these questions.

* * * * * *

"Since the requirement of mutuality of estoppel was expressly abandoned in the Bernhard case. Risdon v. Yates, supra [145 Cal. 210, 78 Pac. 641], and cases following it are not longer authoritative."

 The three pertinent questions stated in the Bernhard case, supra, as determinative of the plea of collateral estoppel must all be answered here in the affirmative.

The second question is: "Was there a final judgment on the merits?" This is covered in the previous portion of this

---

15. Nevarov v. Caldwell (1958) 161 Cal. App.2d 762, at page 765, 327 P.2d 111, at page 114 is to be distinguished from the cases at bar in that, as the Court said, the previous decision "cannot have any bearing upon the issue of John Nevarov's contributory negligence, an issue here present but absent from James' case." In the instant cases there is no issue of contributory negligence of the plaintiffs. Other California cases following Nevarov are also readily distinguishable on the facts from the case at bar.

Memorandum under the heading "Finality."

The third question: "Was the party *against* whom the plea is asserted a party or in privity with a party to the prior adjudication?" obviously requires an affirmative answer as defendant United Air Lines was the party in the prior adjudication against which a verdict and judgment were rendered.

The first of the above stated questions is: "Was the issue decided in the prior adjudication identical with the one presented here?" The thing to be litigated here, aside from damages, is the issue of liability of United Air Lines to the plaintiffs whose decedents were passengers of United Air Lines. The issue of liability of United Air Lines to the passengers on the plane was litigated to the hilt, by lawyers of the highest competence in their field, in the trial of the 24 cases at Los Angeles. The trial on that issue before a jury consumed the better part of 15 weeks. The pre-trial conference on the issue of liability took six days. The conference on Instructions concerning liability alone took seven full days, and counsel were heard at length on all objections. Argument to the jury took four trial days. The trial was commenced almost four years after the accident occurred, so that all of the parties had ample time for discovery which, under any sensible rule, forecloses the possibility that United Air Lines would be able to produce any new or different evidence which might change the result from the one obtained in the 24 cases against United Air Lines tried to a jury in the Southern District of California before the undersigned Judge, who also tried the Cross-claims of the United States and the United Air Lines against each other, and entered judgment thereon. Moreover, United Air Lines has not only failed to indicate that it has any new, different, or additional evidence, but it has also affirmatively indicated that it has none.

The rule of non-necessity for mutuality has been followed in the Tenth Circuit in People of State of Colorado v. Ohio Casualty Ins. Co. et al. (1956), 232 F.2d 474–477; the First Circuit in Haddad v. Border Express, Inc. (1962), 300 F.2d 885, a personal injury and wrongful death case; the Sixth Circuit in Davis v. McKinnon et al. (1959), 266 F.2d 870, a personal injury case which quoted extensively from Bernhard v. Bank of America, supra; and by the Third Circuit in Gibson v. United States (1954), 211 F. 2d 425, a personal injury suit in admiralty. In the Ninth Circuit in Hurley v. Southern California Edison Co. (1950), 183 F.2d 125 at 134, the Court approved the doctrine of Bernhard v. Bank of America, supra, but held it not applicable in that case.

Other cases in point which have followed the same doctrine are: Barbour v. Great Atlantic & Pacific Tea Co. et al. (E.D.Ill.1956), 143 F.Supp. 506, a personal injury case; United Banana Co. v. United Fruit Co. et al. (D.C.Conn.1959), 172 F.Supp. 580 at 588, an Anti-trust case; Kessler v. Eldred (1907), 206 U. S. 285, 27 S.Ct. 611, 51 L.Ed. 1065, a patent case; United States v. Wexler (D.C. E.D.N.Y.1925), 8 F.2d 880, a suit for cancellation of citizenship wherein the Court held a divorce decree on ground of adultery was *res judicata* on that issue, and defendant was collaterally estopped to deny the charge of adultery; Riordan v. Ferguson (D.C.S.D.N.Y.1948), 80 F. Supp. 973, a mortgage foreclosure action in which the Court cited the Bernhard case among others; Ratner v. Paramount Pictures (D.C.S.D.N.Y.1942), 6 F.R.D. 618, a stockholders' derivative action; and Gorski v. Commercial Ins. Co. (E.D. Wis.1962), 206 F.Supp. 11, a personal injury case which cited and quoted at length from the Bernhard case.

Throughout the Federal Rules of Civil Procedure, the Judicial Code and other Statutes of the United States, the recurrent phrase is found "in the interest of justice."

It would be a travesty upon that concept to now require these plaintiffs who are the survivors of passengers for hire on the United Air Lines plane to again re-litigate the issue of liability after it has been so thoroughly and consummately litigated in the trial court in the 24 consolidated cases tried at Los Angeles.

There is every reason "in the interest of justice" for not invoking the rule requiring identity of parties, and no reason in justice or law for invoking it in these cases. Nor is there any constitutional bar to the conclusions herein reached. The defendant has had its day in court on the issue of liability before a jury. And due process is not a one way street. It must be supposed that the plaintiffs have some rights to some day have a determination of their rights.

The Supreme Court, in commenting on the doctrine of res judicata in Reed v. Allen, supra, 286 U.S. at pages 198–199, 52 S.Ct. at page 533, said:

> " * * * we can not be expected, * * * to upset the general and well established doctrine of res judicata, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation—a maxim which comports with common sense as well as public policy. And the mischief which would follow the establishment of a precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship."

The question of res judicata was not before the court in United Air Lines v. Weiner (9 Cir., 1961) 286 F.2d 302, and I cannot read that decision as requiring a retrial of the issue of liability with "normal" [16] damages in these cases, in view of the present state of the record.

### CONCLUSION

The Motions of plaintiffs for summary judgment are entitled to be granted on the ground that the defendant United Air Lines is collaterally estopped to deny liability to the plaintiffs herein under the doctrine of res judicata by virtue of the verdicts and judgments in the cases tried at Los Angeles hereinabove referred to.

That being so, it is unnecessary for the Court to give consideration to the second ground upon which the plaintiffs base their Motion for summary judgment, i. e., plaintiffs, being the survivors of passengers for hire who were killed while on the United Air Lines plane, are entitled to judgment as a matter of law, under the doctrine of res ipsa loquitur.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY AGAINST DEFENDANT UNITED AIR LINES, INC.

The above entitled causes, having been consolidated for trial, and having come on for hearing on plaintiffs' Motion for Summary Judgment on the 5th day of December, 1962, in Courtroom No. One, before the Honorable Peirson M. Hall, Judge presiding, Johnson & Ladenberger by Robert G. Johnson, Margolis and McTernan by Ben Margolis and Belli, Ashe & Gerry by Richard Gerry, appearing as counsel for the plaintiffs, and Chase, Rotchford, Downen & Drukker by Hugh Rotchford and James McCarthy, appearing as counsel for defendant United Air Lines, Inc., and oral and documentary evidence having been introduced on behalf of both parties, and the matter having been heard on all of the files and records in the above entitled cases and upon all of the files and the entire record, including the transcript, exhibits, verdicts and judgments, in the matter of Wiener, etc. v. United Air Lines, Inc., etc. et al., D.C., 216 F.Supp. 701, and cases consolidated therewith (hereinafter referred to as the Wiener case) on the issue of liability of defendants to plaintiffs and on the issue of liability on the counterclaims as between United Air Lines, Inc., and the United States of America; and the Court having considered the same and heard the arguments of counsel and being fully advised, makes the following Findings of Fact, Conclusions of Law, and Order:

### FINDINGS OF FACT

1. The Wiener case consisted of twenty-four separate actions against de-

---

16. Exemplary damages are waived by the plaintiffs in these cases.

fendants United Air Lines, Inc., and the United States of America, each of which was brought by survivors of decedents who were killed as a result of the same mid-air collision between a United Air Lines commercial passenger plane and a United States Air Force jet in the vicinity of Las Vegas, Nevada, on April 21, 1958, which separate cases were all consolidated for trial on the issue of liability of defendants to plaintiffs therein and on the cross claims and counterclaims of the defendants as between themselves.

2. The question of liability in the aforesaid Wiener case was tried to a jury as to the liability of defendant United Air Lines, Inc., which jury returned a verdict on the 23rd day of May, 1962, finding liability against the defendant United Air Lines, Inc., a corporation; and the cross claims between United Air Lines, Inc., and the United States of America in said Wiener case were tried by the Court, sitting without a jury and the Court made its Findings of Fact and Conclusions of Law and Judgments on the cross claims, finding that negligent conduct on the part of each of said defendants was a proximate cause of the aforesaid mid-air collision.

3. Judgments on said verdicts of the jury and said Findings of Fact and Conclusions of Law of the Trial Judge were entered in various of the respective individual cases consolidated in Wiener on the 16th day of November, 1962, and in others on the 19th day of November, 1962, and the 20th day of November, 1962, and in the remaining consolidated cases on the 26th day of November, 1962.

4. Motions for a new trial in each of the cases consolidated in Wiener were made by United Air Lines, Inc., and said motions, and each of them, were denied on the 26th day of November, 1962.

5. Each and all of the cases in Wiener and in the instant consolidated cases arose out of the deaths of passengers aboard the United Air Lines commercial plane as a result of the mid-air collision on April 21, 1958, and the question of liability in the Wiener case is identical with the question of liability in each and all of the cases herein.

6. The Wiener case involved the major portion of the total potential liability of United Air Lines to the survivors of its passengers killed in the aforesaid mid-air collision and the judgments in said Wiener case totalled $2,337,308.51. The large potential liability involved in the Wiener trial was known to all the parties thereto and to their attorneys; and the parties were thus motivated to try the Wiener case in a full and thorough manner.

7. The said Wiener case was in fact most thoroughly prepared and tried by counsel of high competence and experience. The extent of said preparation and the thoroughness of said trial is indicated in part by the following:

(a) Depositions of approximately 36 witnesses, noticed in the instant cases as well as the Wiener case, thoroughly going into the facts of the case were taken in various cities throughout the country, including Washington, D. C.; New York City, New York; Chicago, Illinois; Las Vegas, Nevada; and Los Angeles, California.

(b) In addition, numerous sets of interrogatories numbering in total many hundreds, including interrogatories submitted by defendant United States of America to defendant United Air Lines, Inc., and noticed in the instant cases as well as in the Wiener case, were submitted by the parties to each other and were answered.

(c) There were eight days of pre-trial proceedings resulting in a Pre-Trial Order consisting of 19 typewritten pages.

(d) There were 69 trial days, only three days of which were utilized for the presentation of plaintiffs' case in chief, consisting entirely of the reading of the pre-trial statement and of certain interrogatories and answers thereto and the introduction of exhibits produced by defendants and stipulated to by the parties.

(e) Conferences on instructions on liability were held for a total of four days.

(f) Four days were allowed to counsel for jury argument on liability.

(g) Following the trial, "Consolidated Findings of Fact and Conclusions of

Law: (1) in the Above Entitled Consolidated Actions as Between the Plaintiff and the United States of America Wherein the United States of America is a Defendant; and (2) in the Above Entitled Actions as Between Defendants United States of America and the United Air Lines on the Cross-Claims of Each of Said Defendants Against the Other for Indemnity or Contribution," consisting of 29 pages were prepared following seven court days of hearing with respect thereto.

8. In the Wiener case defendant United Air Lines opposed motions made by defendant United States of America for a change of venue to Nevada and a consolidation of all of the plaintiffs' cases including the Wiener cases and the consolidated cases herein.

9. On the trial in the Wiener case the doctrine of res ipsa loquitur was applied on behalf of plaintiffs against the defendant United Air Lines, Inc., placing upon the defendant United Air Lines, Inc., the burden of going forward with its evidence to meet the inference created by the res ipsa doctrine; all of the evidence introduced in the case consisted of or had as its source either the testimony of witnesses produced by the defendants or exhibits supplied by or through the defendants; on the issue of liability plaintiffs did not produce a single witness nor any exhibits other than one furnished by or through the defendants as above set forth.

10. A period in excess of four and one-half years has elapsed since the date of the accident and application of the doctrine of res judicata and collateral estoppel in this case will result in the prompt disposal on a fair and just basis of all of the remaining cases of liability for deaths of the passengers on the United Air Lines, Inc., plane, arising out of the aforesaid collision of April 21, 1958.

11. In the Wiener litigation defendant United Air Lines, Inc., voluntarily filed and litigated cross claims against the United States of America on the issue of liability.

## CONCLUSIONS OF LAW

### I

The judgments on liability in the Wiener case are final judgments on their merits for the purpose of application of the doctrine of res judicata and collateral estoppel.

### II

The issue decided in the Wiener case was identical with the one presented on liability in the instant consolidated cases.

### III

United Air Lines, Inc., was a party to the prior adjudication establishing its negligence and liability to its passengers. United Air Lines, Inc., has participated in a full, fair adversary proceeding and has had a full opportunity to present its case and has fully presented its case in the Wiener trial on liability; and the doctrine of mutuality of estoppel does not apply to this case.

### IV

It is just and equitable that the doctrine of res judicata and collateral estoppel be applied herein, and the ends of justice will be served thereby.

### V

The judgments in the Wiener case are res judicata as to the liability of defendant United Air Lines, Inc., to plaintiffs in the instant cases and defendant United Air Lines, Inc., is collaterally estopped by virtue of said judgments to deny liability to plaintiffs in this case.

### VI

There is no genuine issue as to any material fact relating to the liability of United Air Lines, Inc., to plaintiffs and plaintiffs are entitled to have their motion for summary judgment on the issue of liability granted.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. The motion of plaintiffs for summary judgment against defendant United Air Lines, Inc., on the issue of liability be and it is hereby granted.

2. Entry of judgment on the issue of liability as aforesaid be entered by the

clerk, provided, however, that in order to provide a uniform and single date for appeal the clerk is ordered to defer the entry of judgment of liability in each of the cases herein until after the trial on damages so that this judgment can and shall be entered simultaneously with the judgments on damages.

3. Pursuant to stipulation of the parties the motion by plaintiffs for summary judgment against defendant United Air Lines, Inc., may be deemed amended to include as one of the consolidated cases in which the motion is made the case of United States of America and Leila E. Pebles, etc., vs. United Air Lines, Inc., a corporation, Case No. 489 PH; and likewise pursuant to stipulation the answer of defendant United Air Lines, Inc., to said motion for summary judgment may be deemed to include as one of the cases covered in said answer the case of Mary F. Darmody, etc., vs. United Air Lines, Inc., a corporation, Case No. 487 PH.